State of Wisconsin, Plaintiff-Respondent,
v.
Steve Yang, Defendant-Appellant.
No. 03-1423-CR.
Court of Appeals of Wisconsin.
Opinion Filed: April 13, 2004.
Before Wedemeyer, P.J., Fine and Curley, JJ.
¶1. PER CURIAM.
Steve Yang appeals from a judgment entered on jury verdicts finding him guilty of first-degree recklessly endangering safety with the use of a dangerous weapon, discharging a firearm from a vehicle, and possession of a firearm by a felon, all as an habitual criminal, see Wis. Stat. §§ 941.30(1), 939.63, 941.20(3)(a)2, 941.29(2), 939.62 (2001-02), and from an order denying his postconviction motion.[1] Yang alleges that his trial counsel rendered ineffective assistance when the lawyer failed to: (1) impeach the credibility of a State witness; (2) investigate a potential witness; and (3) inform him of the possibility of requesting a lesser-included-offense instruction. He also claims that the trial court erroneously exercised its discretion when it: (1) denied his ineffective-assistance-of-counsel claim without a hearing under State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979); (2) refused to instruct the jury on a privilege defense; and (3) refused to have read certain testimony to the jurors during their deliberations. We affirm.

I.
¶2. Steve Yang was charged for shooting at Pao Vang and Mai Yang. Steve Yang pled not guilty and went to trial. At trial, Pao Vang testified that on April 6, 2001, he was driving north on 32nd Street in the City of Milwaukee with Mai Yang and Daniel Lor. Mai Yang was in the front passenger seat of the car and Daniel Lor was in the back. According to Pao Vang, he stopped the car to talk to two women, Maiong Xiong and Jennifer Cheng. Maiong Xiong was standing next to a red car, and Jennifer Cheng was sitting in the back. Pao Vang testified that he was talking to Jennifer Cheng when a man in the red car, whom was later identified as Steve Yang, pulled out a gun and started to shoot at his car. Pao Vang claimed that Steve Yang shot at the car about five to eight times and that Steve Yang continued to shoot as he drove away. Pao Vang and Mai Yang were shot in the arm. According to Pao Vang, no one in his car had a gun.
¶3. Pao Vang further testified that after the shooting, he drove for a few blocks until he saw a fire station. He stopped at the fire station and told someone that he had been shot. According to Pao Vang, personnel at the fire station then pulled him and Mai Yang out of the car because they were too injured to get out and took them to a hospital.
¶4. Steve Yang testified that on April 6, 2001, he and Tou Xiong left a party and drove to Maiong Xiong's house. Steve Yang told the jury that when he and Tou Xiong got into the car, Tou Xiong asked him to hold a gun. According to Steve Yang, he told Tou Xiong to put the gun in between the two front seats of the car next to the parking brake and Tou Xiong did so. Tou Xiong then drove to Maiong Xiong's house while Steve Yang sat in the front passenger seat of the car. When Tou Xiong arrived at Maiong Xiong's house, he parked the car and Jennifer Cheng got into the back seat. Maiong Xiong stood outside the car while the group talked and listened to music.
¶5. According to Steve Yang, about ten minutes later, a white car pulled up next to their car. Steve Yang testified that he had a conversation with the driver of the car, whom he later learned was Pao Vang, about gang affiliations. According to Steve Yang, Pao Vang asked him and Tou Xiong if they were "Bloods." Steve Yang told Pao Vang that he was a "Bad Boy Crip." Steve Yang claimed that Pao Vang then put his hand into his jacket and pulled out a black gun. Steve Yang admitted that he grabbed the gun that was between the front seats of the car and began to shoot at the men in the white car. Yang testified that he shot at them, even though Mai Yang and Daniel Lor did not threaten him, because "I had a feeling that if I wasn't going to shoot them they was [sic] going to shoot me."
¶6. Jennifer Cheng and Maiong Xiong also testified about the shooting. Jennifer Cheng testified that she was in a car with Steve Yang and Tou Xiong when a white car drove up. According to Jennifer Cheng, there was a conversation about gang affiliations and then Steve Yang "just took out a gun and he just started popping." Jennifer Cheng told the jury that she did not see anyone with a gun in the white car.
¶7. Maiong Xiong testified that she was standing by Tou Xiong's car when a white car drove up. Maiong Xiong told the jury that there was a conversation about gang affiliations and the "next thing I know I just heard bullets, gunshot." Maiong Xiong testified that she saw Pao Vang's hand go into his shirt as if he was going to grab a weapon. She admitted, however, that she did not actually see a weapon. Maiong Xiong also testified that she had a conversation with Steve Yang a few days after the shooting in which he told her that he shot at the other car because "[t]hey shouldn't be talking us [sic] shit." Steve Yang did not, however, mention to Maiong Xiong that he saw Pao Vang with a gun. Steve Yang does not argue on appeal that his lawyer's failure to object to the admission of this evidence was ineffective assistance. Accordingly, an issue concerning this testimony is waived. Reiman Assocs., Inc. v. R/A Adver., Inc., 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 n.1 (Ct. App. 1981) (contentions not briefed are waived).
¶8. Finally, a firefighter and a police officer who treated Pao Vang and Mai Yang at the fire station testified. The firefighter testified that when Pao Vang drove up and asked for help, he looked into Pao Vang's car and did not see any weapons. The police officer testified that he searched Pao Vang's car after Pao Vang and Mai Yang were taken for medical treatment. The police officer said he did not find a gun or bullet casings anywhere in the car.
¶9. A jury found Steve Yang guilty of first-degree recklessly endangering the safety of Mai Yang with the use of a dangerous weapon, discharging a firearm from a vehicle, and possession of a firearm by a felon, but not guilty of first-degree recklessly endangering the safety of Pao Vang with the use of a dangerous weapon. The trial court sentenced him to a total of forty-three years in prison, with twenty-five years of initial confinement and eighteen years of extended supervision.
¶10. Steve Yang filed a postconviction motion, alleging ineffective assistance of counsel and trial court error. The trial court denied Steve Yang's claims without a Machner hearing.

II.

A. Ineffective Assistance of Trial Counsel
¶11. The familiar two-pronged test for ineffective-assistance-of-counsel claims requires a defendant to prove: (1) deficient performance; and (2) prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove deficient performance, a defendant must show specific acts or omissions of counsel that are "outside the wide range of professionally competent assistance." Id. at 690. There is a "strong presumption that counsel acted reasonably within professional norms." State v. Johnson, 153 Wis. 2d 121, 127, 449 N.W.2d 845, 848 (1990).
¶12. To prove prejudice, a defendant must show that counsel's errors were so serious that the defendant was deprived of a fair trial and a reliable outcome. Strickland, 466 U.S. at 687. In order to succeed, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
¶13. Our standard for reviewing this claim involves mixed questions of law and fact. Johnson, 153 Wis. 2d at 127, 449 N.W.2d at 848. Findings of fact will not be disturbed unless clearly erroneous. Id. The legal conclusions, however, as to whether counsel's performance was deficient and prejudicial, present questions of law. Id., 153 Wis. 2d at 128, 449 N.W.2d at 848. Finally, we need not address both Strickland prongs if the defendant fails to make a sufficient showing on either one. Strickland, 466 U.S. at 697.

1. Failure to Impeach
¶14. Steve Yang alleges that his lawyer rendered ineffective assistance when he failed to impeach Pao Vang on three grounds. We address each claim in turn.
¶15. First, Steve Yang contends that his lawyer failed to "establish" that Pao Vang was scheduled to plead guilty to the charge of obstructing an officer one week after Steve Yang's trial. This claim lacks merit. Wisconsin Stat. Rule 906.09 provides that prior convictions are admissible to impeach a witness. See Rule 906.09(1) ("For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime ... is admissible.") (emphasis added). Pao Vang had not been convicted of obstructing an officer when he testified at Steve Yang's trial because, according to Steve Yang, Pao Vang had not yet pled guilty. See State v. Trudeau, 157 Wis. 2d 51, 54, 458 N.W.2d 383, 384-385 (Ct. App. 1990) (an accepted guilty plea constitutes a conviction under Rule 906.09(1)). Thus, Pao Vang's pending charge was not admissible under Rule 906.09.
¶16. Steve Yang argues that this evidence would have been admissible, however, because "no such evidentiary rule would have prohibited [Steve]Yang's trial counsel from clarifying the status of Pao Vang's obstruction case and conviction because Pao Vang had already testified, incorrectly, on direct examination that he had been convicted of the obstructing change." We disagree.
¶17. At trial, Pao Vang testified that he had a prior conviction for obstructing an officer. The trial court later instructed the jury that Pao Vang's testimony was incorrect because a "check has revealed that [Pao] Vang has not been convicted of any crime." Steve Yang alleges that, under these circumstances, his lawyer should have been "permitted, under [Wis. Stat. Rule] 906.09 and Nicholas [v. State, 49 Wis. 2d 683, 183 N.W.2d 11 (1971)], to clarify the confusion created by Pao [Vang]'s incorrect testimony by informing the jury that he was due to enter a plea to the obstructing charge in the week following the trial." The trial court's instruction to the jury was well within its discretion because it, in effect, restored the status quo of Pao Vang's then-extant criminal-conviction condition. See State v. Truax, 151 Wis. 2d 354, 362, 444 N.W.2d 432, 436 (Ct. App. 1989) (jury presumed to follow trial court's instruction).
¶18. Steve Yang also contends that he is not required to affirmatively prove that he was prejudiced by his lawyer's allegedly deficient performance because he was denied the right to an effective cross-examination of Pao Vang. See United States v. Cronic, 466 U.S. 648, 658-659 (1984) ("if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that make the adversary process itself presumptively unreliable"). We disagree.
¶19. A defendant has a Sixth Amendment right to cross-examine witnesses. Davis v. Alaska, 415 U.S. 308, 315 (1974). This includes the right to attack or impeach the credibility of the witness by revealing "possible biases, prejudices, or ulterior motives of the witness." Id. at 316. Under this rule, a defendant may impeach a State witness with a pending charge. See State v. Randall, 197 Wis. 2d 29, 37, 539 N.W.2d 708, 711-712 (Ct. App. 1995).
¶20. In this case, Steve Yang appears to allege that his attorney should have impeached Pao Vang with his pending charge to show bias and a motive to fabricate his testimony. Unlike the situation in Davis, however, this case does not involve a trial court preventing the lawyer from using the government's possible "hook" into the witness as an arguable motive for the witness to try to curry favor with the government by falsely accusing the defendant of a crime. Davis, 415 U.S. at 319. Here, Steve Yang contends that his lawyer gave him prejudicially deficient representation, and thus, we must analyze the issue in the context of the two-prong ineffective-assistance-of-counsel rubric. See Kimmelman v. Morrison, 477 U.S. 365, 375 (1986) (unobjected-to error must be analyzed under ineffective-assistance-of-counsel standards, even when the error is of constitutional dimension).
¶21. To prevail on this claim, Steve Yang must show that his lawyer's failure to impeach Pao Vang with the pending charge made the jury's verdicts unreliable. As we have seen, however, Steve Yang's own testimony established beyond a reasonable doubt that he was the shooter. The only issue in dispute was whether Steve Yang acted in self-defense. Steve Yang's self-defense claim turns on whether Pao Vang threatened him with a weapon. At trial, Steve Yang was the only witness who testified that he saw Pao Vang with a gun. Pao Vang testified that no one in his car had a gun, and two eyewitnesses to the shooting, Jennifer Cheng and Maiong Xiong testified that they also did not see a gun in Pao Vang's car. Moreover, personnel who treated Pao Vang and Mai Yang after the shooting testified that they did not find a gun in Pao Vang's car. From this evidence, the jury could have reasonably believed that Pao Vang did not threaten Steve Yang with a weapon. Pao Vang's testimony was fully corroborated by eyewitness testimony and the lack of physical evidence. While Pao Vang's pending change may have added incrementally to the jury's assessment of Pao Vang's credibility, Steve Yang's lawyer's failure to introduce evidence about that pending charge did not make the trial's result unreliable. Steve Yang has not sustained his burden to show prejudice under the second part of the Strickland test.
¶22. Second, Steve Yang complains that his lawyer did not impeach Pao Vang with a juvenile adjudication for possession of a dangerous weapon. The adjudication, however, was reversed. See State v. Pao V., No. 99-1991, unpublished slip op. (WI App. Jan. 11, 2000). An adjudication that has been reversed may not be used to impeach a witness. State v. Bowie, 92 Wis. 2d 192, 203, 284 N.W.2d 613, 618 (1979). Nonetheless, Steve Yang appears to suggest that, aside from impeachment, Pao Vang's prior weapons adjudication would have been admissible to support his self-defense claim that Pao Vang had a gun and threatened to use it at the time of the shooting. We disagree. Any prior conviction Pao Vang may have had is irrelevant to Steve Yang's self-defense claim.
[W]hen there is a sufficient factual basis for a claim of self-defense, a defendant may support the defense by establishing "the turbulent and violent character of the victim by proving prior specific instances of violence within his knowledge at the time of the incident.... [I]t must be shown that he knew of such violent acts of the victim prior to the affray."
State v. Navarro, 2001 WI App 225, ¶13, 248 Wis. 2d 396, 636 N.W.2d 481 (emphasis added; quoted source omitted). In this case, it is impossible for Steve Yang to have known of what he claims is Pao Vang's propensity for using weapons. At trial, Steve Yang testified that he did not know Pao Vang before he shot at him. Thus, this evidence would not have been admissible to support Steve Yang's self-defense claim.
¶23. Third, Steve Yang claims that his lawyer failed to impeach Pao Vang about the events that formed the basis for Pao Vang's obstruction charge. In his postconviction motion, Steve Yang claimed that Pao Vang's obstruction charge:
involved an incident in which Milwaukee detectives went to Pao Vang's apartment the week following the incident involving Steve Yang; that the detectives observed a photo album showing a photo of what appeared to be Pao Vang holding a semi-automatic pistol; and that when Pao Vang observed the detective holding the photo album, Pao Vang grabbed the album and began eating the photos; and that Pao Vang admitted that the photograph showed himself holding a .22 pistol.
When cross-examined at trial, Pao Vang admitted that he tried to eat a photograph, but denied that he was the person in the photograph. Steve Yang thus contends that his lawyer should have impeached Pao Vang with the testimony of a detective to whom Pao Vang allegedly admitted that he tried to eat a photograph of himself holding a pistol. We disagree.
¶24. Wisconsin Stat. Rule 906.08(2) prohibits impeachment on a collateral matter with extrinsic evidence. McClelland v. State, 84 Wis. 2d 145, 160-161, 267 N.W.2d 843, 850 (1978). A matter is collateral if the challenged testimony could not have been admitted for a purpose other than the contradiction. Id., 84 Wis. 2d at 159-160, 267 N.W.2d at 850. The allegation that Pao Vang tried to eat a picture of him holding a pistol is collateral to the issue of Steve Yang's guilt or innocence. It would have been introduced solely to impeach Pao Vang, and as such would have been inadmissible. An attorney is not required to seek to introduce evidence that is inadmissible. See State v. Wheat, 2002 WI App 153, ¶14, 256 Wis. 2d 270, 647 N.W.2d 441 (attorney's failure to raise an issue of law is not deficient performance if the issue is without merit). Thus, Steve Yang's lawyer was not deficient in his cross-examination of Pao Vang.

2. Failure to Investigate a Witness
¶25. Next, Steve Yang claims that his lawyer was ineffective because he failed to investigate Tou Xiong as a potential witness. Steve Yang alleges that Tou Xiong would have testified that he saw Pao Vang reach into his jacket as if he were going to pull out a gun. Steve Yang contends that this testimony was "critical" because it would have corroborated his self-defense claim.[2]
¶26. This argument fails on both Strickland prongs. First, Steve Yang knew that Tou Xiong had witnessed the shooting. He was with Tou Xiong when the shooting occurred and could easily have told this to his lawyer. See State v. Nielsen, 2001 WI App 192, ¶23, 247 Wis. 2d 466, 634 N.W.2d 325 ("This court will not find counsel deficient for failing to discover information that was available to the defendant but that defendant failed to share with counsel."). Second, Steve Yang was not prejudiced by Tou Xiong's failure to testify. As we have seen, Steve Yang was charged with recklessly endangering the safety of Pao Vang and Mai Yang. The only difference between the two charges was that the jury was instructed that it could use Steve Yang's self-defense claim with respect to Pao Vang, but not Mai Yang: "the fact that the law may allow the defendant to use force in self-defense as to Pao Vang does not necessarily mean that the causing of harm to Mai Yang was lawful." As we have seen, the jury found Steve Yang not guilty of recklessly endangering the safety of Pao Vang. He has not established prejudice.

3. Failure to Discuss Lesser-Included Offense
¶27. Steve Yang also claims that his lawyer did not inform him of the possibility of requesting a lesser-included-offense instruction of second-degree recklessly endangering safety. Again, we disagree.
¶28. A lawyer is not ineffective if he or she fails to request a lesser-included-offense instruction when the defendant would not have been entitled to the instruction in the first instance. See State v. Van Straten, 140 Wis. 2d 306, 320, 409 N.W.2d 448, 454-455 (Ct. App. 1987).
Whether a lesser-included offense should have been submitted to a jury is a legal matter that we independently determine. The analysis has two steps. First, the requested instruction must concern a crime that is, as a legal matter, a lesser-included offense of the crime charged. Second, if it is, there must be "reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser offense."
State v. Martin, 156 Wis. 2d 399, 402, 456 N.W.2d 892, 894 (Ct. App. 1990) (citations and quoted source omitted).
¶29. In this case, neither party disputes that second-degree recklessly endangering safety is a lesser-included offense of first-degree recklessly endangering safety. Moreover, as noted, Steve Yang was acquitted on the charge of first-degree recklessly endangering the safety of Pao Vang. Thus, his claim only applies to his conviction for recklessly endangering the safety of Mai Yang. Accordingly, we turn to the issue of whether there was an evidentiary basis to acquit Steve Yang of first-degree recklessly endangering the safety of Mai Yang and convict him of second-degree recklessly endangering the safety of Mai Yang.
¶30. Both degrees of recklessly endangering safety require reckless endangerment. First-degree recklessly endangering safety requires the additional element of having done so "under circumstances which show utter disregard for human life." Wis. Stat. § 941.30(1). The element of utter disregard for human life is measured under an objective standard. State v. Jensen, 2000 WI 84, ¶17, 236 Wis. 2d 521, 613 N.W.2d 170. It "`does not require the existence of a[ny] particular state of mind in the actor at the time of the crime but only requires that there be conduct imminently dangerous to human life.'" State v. Blanco, 125 Wis. 2d 276, 281, 371 N.W.2d 406, 409 (Ct. App. 1985) (quoted source omitted).
¶31. Here, the undisputed evidence shows that Steve Yang did things that were imminently dangerous to Mai Yang's life. Steve Yang admitted that he fired a gun several times at a car in which Mai Yang was sitting. Moreover, there is evidence that Steve Yang continued to shoot at the car as Pao Vang drove away. Under these facts, no reasonable jury could have acquitted Steve Yang of first-degree recklessly endangering Mai Yang's safety, see State v. Davis, 144 Wis. 2d 852, 863-864, 425 N.W.2d 411, 416 (1988) (there is no reasonable basis to acquit a defendant of a crime in which utter disregard for human life is an element where the defendant points a gun at a vital part of the victim's body); thus, Steve Yang was not entitled to an instruction on second-degree recklessly endangering Mai Yang's safety.

B. Trial Court Error

1. Failure to Hold a Machner Hearing
¶32. Steve Yang claims that the trial court erred when it denied his ineffective-assistance-of-counsel claims without holding a Machner hearing. A trial court must hold a Machner hearing if the defendant alleges facts that, if true, would entitle the defendant to relief. See State v. Bentley, 201 Wis. 2d 303, 309, 548 N.W.2d 50, 53 (1996). If, however:
"the defendant fails to allege sufficient facts in his motion to raise a question of fact, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing."
Id., 201 Wis. 2d at 309-310, 548 N.W.2d at 53 (quoted source omitted). As we have seen, the record conclusively demonstrates that Steve Yang is not entitled to relief on his ineffective-assistance-of-counsel claims. Accordingly, the trial court did not erroneously exercise its discretion when it summarily denied Steve Yang's postconviction motion.

2. Privilege Instruction
¶33. Next, Steve Yang alleges that the trial court erroneously exercised its discretion when it refused to instruct the jury on a privilege-defense to the charge of being a felon in possession of a firearm. We disagree.
¶34. A narrow defense of privilege to the charge of being a felon in possession of a firearm exists under Wis. Stat. § 939.45(6). State v. Coleman, 206 Wis. 2d 199, 210, 556 N.W.2d 701, 705 (1996); see also Wis JI-Criminal 1343A. To invoke the privilege, the defendant must prove that:
(1) the defendant was under an unlawful, present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury, or the defendant reasonably believes he or she is under such a threat; (2) the defendant did not recklessly or negligently place himself or herself in a situation in which it was probable that he or she would be forced to possess a firearm; (3) the defendant had no reasonable, legal alternative to possessing a firearm, or reasonably believed that he or she had no such alternative; in other words, the defendant did not have a chance to refuse to possess the firearm and also to avoid the threatened harm, or reasonably believed that he or she did not have such a chance; (4) a direct causal relationship may be reasonably anticipated between possessing the firearm and the avoidance of the threatened harm; [and] (5) the defendant did not possess the firearm for any longer than reasonably necessary.
Coleman, 206 Wis. 2d at 210-211, 556 N.W.2d at 706 (footnote omitted). It is "rare[]" that a defendant will be able to establish these elements "because of the difficulty in proving that he or she did not have a reasonable legal alternative to violating the law, and that he or she possessed the firearm for a period of time no longer than reasonably necessary." Id., 206 Wis. 2d at 212, 556 N.W.2d at 706 (quoted source and footnote omitted).
¶35. In this case, the trial court refused to give the jury a privilege instruction because it concluded that Steve Yang could not satisfy the fifth requirement, i.e., that Steve Yang did not possess the gun for any longer than reasonably necessary:
In the record [Steve Yang] acknowledged that he learned of the weapon when he was outside the house after he left the party to go to the girls house with [Tou Xiong.] ... Clearly, he knew that there was a weapon. Then when they got in the car again by the defendant's own testimony, he acknowledged that he knew the weapon was loaded and he in fact directed [Tou Xiong] where to place the gun in the car. That clearly was accessible to him and under the definition of possession, the court feels that clearly at the time in applying the five prong test, the defendant is not entitled to the instruction pursuant to the Coleman case and 1343A.
Steve Yang contends that he did not possess the weapon before the shooting because he was merely a passenger in the car and did not touch the gun until he felt threatened. We disagree.
¶36. "An item is ... in a person's possession if it is in an area over which the person has control and the person intends to exercise control over the item." Wis JI-Criminal 920 (footnote omitted).[3] In this case, Steve Yang's testimony establishes that he was in possession of the gun when he got into the car with Tou Xiong. As we have seen, Steve Yang told Tou Xiong to place the gun in between the car's front seats, an area over which Steve Yang had control. Moreover, Steve Yang intended to and did in fact exercise control over the gun once it was placed in between the seats. The fact that Steve Yang did not physically touch the gun until he felt threatened is of no consequence. The gun was located in an area over which he exercised dominion and control. See United States v. Whitley, 905 F.2d 163, 165 (7th Cir. 1990) (gun found within defendant's reach sufficient to support inference of possession). Steve Yang makes no allegation that he reasonably believed that he was under an unlawful threat of imminent death or great bodily harm when he first got into the car with Tou Xiong. Accordingly, a reasonable construction of this evidence, viewed favorably to Steve Yang, does not support his defense. See Coleman, 206 Wis. 2d at 213-214, 556 N.W.2d at 707 (we must ask "whether a reasonable construction of the evidence, viewed favorably to the defendant, supports the alleged [privilege] defense").

3. Jury Request
¶37. Finally, Steve Yang claims that the trial court erroneously exercised its discretion when it refused to read certain testimony to the jurors during their deliberations. After the jury had reached its verdicts, but before the verdicts were read, the trial court informed the parties that it, outside of the parties' presence, had denied the jury's request to have Steve Yang's testimony read to it:
After lunch at some point, the jury probably about sometime  a few minutes after lunch, the jury wanted the testimony of the defendant read back in its entirety.
The Court advised the bailiff to tell the jury, as I had advised them at the outset, that I am not going to read back that from the transcript and that they should recall and remember the testimony and evidence that they heard in the record.
It is not the practice of the Court to read back entire portions of the testimony, particularly, [because] I think [it] is inconsistent with what the instructions necessarily are and the Court advised the jury that it would not read  have that testimony read back.
Neither party objected.
¶38. Steve Yang claims that the trial court erroneously exercised its discretion for two reasons. First, Steve Yang claims that the trial court erroneously exercised its discretion when it denied the jury's request to have his testimony read back to it.
Normally, a request by the jury to have a portion of the transcript read back to them lies within the broad discretion of the trial judge. The rationale behind a refusal on the part of trial judges to allow a reading of a portion of the testimony is twofold: first, because these requests may slow the trial; and second, because a reading of only one portion of the testimony may cause the jury to give that portion undue emphasis.
United States v. Rabb, 453 F.2d 1012, 1013-1014 (3d Cir. 1971); see Kohlhoff v. State, 85 Wis. 2d 148, 159, 270 N.W.2d 63, 68 (1978) (trial court's decision to read testimony to jury within its discretion). In this case, Steve Yang's attorney did not object when the trial court told the parties of its refusal to read back Steve Yang's testimony. Accordingly, we will not review Steve Yang's allegation in the context of an alleged trial-court error; rather, we review it as an ineffective-assistance-of-counsel claim, even though he does not formally argue that his lawyer was prejudicially deficient for not objecting. See State v. McMahon, 186 Wis. 2d 68, 79-80, 519 N.W.2d 621, 626 (Ct. App. 1994) (claim waived because it was not raised at trial analyzed in context of ineffective assistance); Kimmelman, 477 U.S. at 375 (defendant must prove that his or her claim is meritorious and that there is a reasonable probability that the verdict would have been different absent excluded evidence to demonstrate prejudice). Steve Yang has presented nothing that shows that the verdicts were unreliable because he was not present when the trial court denied the jury's request. There was no prejudice.
¶39. Second, Steve Yang contends that he was denied his constitutional right to be present during all phases of the trial when the trial court communicated with the jury without his or his lawyer's knowledge.
Unless a defendant has waived his or her rights, a trial court's communication with a deliberating jury in the absence of the defendant and defendant's counsel violates the defendant's constitutional right to be present at trial and to have counsel at every stage where he or she needs aid in dealing with legal problems. When a trial court commits this type of violation, the error is subject to harmless error analysis. We examine the circumstances and substance of the communication in light of the entire trial to determine whether the error was harmless. An error is harmless if there is no reasonable possibility that the error affected the outcome of the trial.
State v. Koller, 2001 WI App 253, ¶62, 248 Wis. 2d 259, 635 N.W.2d 838 (citations omitted). In this case, the trial court's error in communicating with the jury outside of the parties' presence was harmless. The trial court's instructions did not relate to the substance of the case and there is no evidence that the jury's verdicts would have been different if the trial court had denied the jury's request in Steve Yang's presence. See McMahon, 186 Wis. 2d at 88, 519 N.W.2d at 629 (trial court's comments to deliberating jury without the defendant or his counsel present harmless error).
By the Court.  Judgment and order affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Steve Yang further alleges that Tou Xiong would have testified that the gun Steve Yang used belonged to him. He claims that this testimony would have established a basis for the trial court to instruct the jury on a privilege to the charge of being a felon in possession of a firearm. As we will see below, whether or not Tou Xiong was the owner of the gun does not affect the privilege analysis. See Wis JI-Criminal 920 ("It is not required that a person own an item in order to possess it. What is required is that the person exercise control over the item.").
[3] Possession includes both actual and constructive possession. State v. Peete, 185 Wis. 2d 4, 14-16, 517 N.W.2d 149, 152-153 (1994). The Wisconsin Criminal Jury Instructions Committee disfavors the use of the term "constructive possession," however, because in its view, the term implies something other than "actual" or "real" possession. According to the Committee, it is preferable not to refer to "constructive possession" as a substitute or alternative for "real" possession. Rather, it should be viewed as a description of circumstances that are sufficient to support an inference that the person exercised control over, or intended to possess, the item in question.

Wis JI-Criminal 920, Comment 2; see also State v. Allbaugh, 148 Wis. 2d 807, 813-814, 436 N.W.2d 898, 901 (Ct. App. 1989). Accordingly, we use the Committee's definition of "constructive possession" in our analysis.