STATE of Wisconsin, Plaintiff-Respondent,

v.

Jacob B. JONES, Defendant-Appellant.†

Court of Appeals

*No. 2007AP1989–CR. Submitted on briefs May 13, 2008.
—Decided September 25, 2008.*

2008 WI App 154

(Also reported in 762 N.W.2d 106.)

† Petition to review denied.

408

410

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David R. Karpe* of *Karpe Law Office*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Stephen W. Kleinmaier*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Higginbotham, P.J., Vergeront and Bridge, JJ.

¶ 1. BRIDGE, J. Jacob Jones was convicted of repeated acts of sexual assault of a child and sexual exploitation a child. Evidence admitted at trial was seized during a warrantless search of Jones's bedroom. Prior to trial, Jones filed a motion to suppress the evidence, which was denied. Jones challenges the ruling on appeal. He first contends that the search was a police search, not a probation search, and therefore required a warrant. He also contends that if the search was a probation search, it was not reasonable. In addition, he argues that the use of a locksmith to gain entry into his bedroom constituted a violation of WIS. ADMIN. CODE § DOC 328.21(3)(f) (Dec. 2006), which he asserts compels suppression of the evidence discovered during the search. We reject each of Jones's arguments and affirm.

## BACKGROUND

¶ 2. On February 18, 2005, Detective Pertzborn of the DeForest Police Department informed Shelly Trimble, Jones's parole agent, that he had information that Jones was sexually involved with a fourteen-year-old girl. The officer also advised Trimble that he had knowledge that Jones had given the girl nude photographs of himself and love notes. Trimble decided to have Jones taken into custody. She attempted to contact Jones by phone but was unable to reach him. Trimble discussed the situation with her supervisor, Leann

Moberly, who instructed Trimble to conduct an unscheduled home visit with the assistance of the DeForest police. Trimble testified that it was regular practice to have police accompany Department of Corrections (DOC) agents on home searches in order to secure the residence and for protection. She also testified that she was aware that Jones had conflicts with his prior parole agent, and that she was particularly concerned about her safety around him.

¶ 3. Accompanied by DeForest police officers, Trimble went to Jones's residence. Trimble rang Jones's doorbell and he answered the door bare-chested. Trimble asked Jones to put on a shirt and Jones went down the stairs into his basement bedroom to do so. When Jones came out of the bedroom, he pulled the door shut behind him. Apparently, the act of shutting the door caused the door to lock.[1] After Jones exited his bedroom, police officers placed him in handcuffs. A police officer attempted to open the door but found that it was locked and so informed Trimble when she arrived at the bedroom door.

¶ 4. When questioned by Trimble as to why the door was locked, Jones initially denied that the bedroom was his. However, he later admitted that it was. Jones also told Trimble that he had accidently locked the door, that the key was inside, and that there was no other access into the room without a key. Officers searched Jones's person but did not find a key. Trimble asked Jones if there was anything in the room that would be a violation of his parole, and Jones stated that there was a marijuana pipe in the bedroom. Trimble

---

[1] Jones points out that the record does not contain any evidence that, aside from shutting the door, he did anything to cause the door to lock.

told Jones that she was suspicious that there were other items besides the pipe that Jones was trying to hide in the room.

¶ 5. After conferring with Moberly regarding the locked door, Trimble was advised that it was DOC policy not to use force to gain access. Trimble then telephoned Jones's mother, Pat Jones, who owned the home, and she agreed to come home to assist with the situation. By the time Pat arrived, police officers had removed Jones from the residence. Pat attempted to open the locked door with various objects, but was unsuccessful. She expressed concern about not wanting any damage done to the door and the DeForest Chief of Police, who was present on the scene, offered to pay for a locksmith. Trimble again contacted Moberly and was advised that, if the police department paid for it, Trimble was authorized to proceed with the use of a locksmith to open the door.

¶ 6. The locksmith arrived within half an hour and easily opened the door within five minutes and without causing any damage. After officers entered and surveyed the room, Trimble entered the room by herself and conducted the search without police involvement. During her search, Trimble discovered, among other items, nude photos, allegedly of the fourteen-year-old victim, female clothing, and love letters. With Moberly's permission and in conformity with DOC policy, Trimble later transferred possession of the seized items to Detective Pertzborn.

¶ 7. Jones was charged with second-degree sexual assault of a child in violation of WIS. STAT. § 948.025(1)(b) (2003–04),[2] and sexual exploitation of a

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

child in violation of Wɪs. Sᴛᴀᴛ. § 948.05(1)(b). Pursuant to Wɪs. Sᴛᴀᴛ. § 939.62, a repeater sentence enhancer was attached to each count.

¶ 8. Jones filed a motion to suppress the evidence seized from his bedroom, which the circuit court denied. Following a jury trial, he was found guilty of both counts. Jones appeals the judgment of conviction, arguing that the circuit court improperly denied his suppression motion. We reference additional facts as needed in the discussion below.

## DISCUSSION

### Jᴏɴᴇs's Sᴛᴀᴛᴜs ᴀᴛ ᴛʜᴇ Tɪᴍᴇ ᴏғ ᴛʜᴇ Sᴇᴀʀᴄʜ

¶ 9. The State claims that Jones was on parole at the time of the search. Jones claims that he was instead on extended supervision, and that his status is more closely analogous to a probationer rather than to a parolee. However, both parties agree that the focus of the analysis in this case is on whether the search was valid under *State v. Griffin*, 131 Wis. 2d 41, 46, 388 N.W.2d 535 (1986), *aff'd*, 483 U.S. 868 (1987), which holds that a probation officer may search a probationer's residence without a warrant if the officer has reasonable grounds to believe that the probationer has contraband. The holding in the State Supreme Court's decision *Griffin* applies to probationers as well as parolees. *See State v. Flakes*, 140 Wis. 2d 411, 426, 410 N.W.2d 614 (Ct. App. 1987). We will assume without deciding that Jones was on extended supervision at the time of the search.

### Pʀᴏʙᴀᴛɪᴏɴ Sᴇᴀʀᴄʜ Vᴇʀsᴜs Pᴏʟɪᴄᴇ Sᴇᴀʀᴄʜ

¶ 10. Jones first contends that the search of his room was not a probation search, but was instead a

police search, and therefore required a warrant. Usually, a police search of an individual's home may be undertaken only pursuant to a warrant. *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). Exceptions have been permitted, however, when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Id.* (citation omitted). In *Griffin*, the United States Supreme Court upheld the warrantless search of a probationer's residence conducted pursuant to a Wisconsin regulation[3] permitting probation officers to search a probationer's home as long as there were reasonable grounds to believe there was contraband inside. *Id.* at 870–72. The Supreme Court held that a state's operation of its probation system presented a "special need[]" for the exercise of supervision to assure that probation restrictions were observed. *Id.* at 876. In short, when it comes to probationary searches, we depart from the usual requirement of a warrant and replace the probable cause standard with a reasonable grounds standard. *Id.* at 873–76.

■■

¶ 11. Our review of whether a search is a police or probationary search is a question of constitutional fact, which presents a mixed question of fact and law and requires the application of a two-step process. *State v. Hajicek*, 2001 WI 3, ¶ 14–15, 240 Wis. 2d 349, 358, 620 N.W.2d 781 (2001). We first review the circuit court's finding of historical fact under the clearly erroneous

---

[3] As we discuss *infra* in ¶¶ 17–23, the regulation at issue in *State v. Griffin*, 131 Wis. 2d 41, 388 N.W.2d 535 (1986) and *Griffin v. Wisconsin*, 483 U.S. 868 (1987), Wis. Admin. Code § HHS 328.21(3)(a) (May 1986), is also at issue in the present case. The section is now, however, categorized under the Department of Corrections' regulations.

standard. *Id.*, ¶ 15. We then review the circuit court's determination of constitutional fact de novo.[4] *Id.* The determination of whether a search is a probation search or a police search requires a conclusion based on an analysis of all the facts surrounding the search. *Id.*, ¶ 23.

¶ 12. Jones concedes that the mere presence of police does not *per se* render the search a police search. Instead, he argues that the extent of police involvement in this case exceeded that acceptable for a probation search. In support of his position, Jones points to the following factors: (1) the police accompanied Trimble to Jones's home; (2) the police were conducting a separate investigation into Jones concurrently with the probation investigation; (3) the information leading to the search originated from police; (4) the accusation of sexual assault was based on circumstantial evidence in the form of a nude photo and love letters, rather than on an accusation by the minor child; (5) police officers attempted to open Jones's bedroom door; (6) police suggested that a locksmith be called and offered to cover the expense; and (7) the evidence seized during the search was subsequently placed in the custody of the police officer who provided the tip leading to the search.

¶ 13. The circuit court referenced several historical facts including the following that contributed to its conclusion that the search was a probationary search rather than a police search. Trimble received specific information from Pertzborn that, if true, would have been in Trimble's opinion a violation of law and inconsistent with Jones's rehabilitation. For safety purposes,

---

[4] A question of constitutional fact is one "whose determination is 'decisive of constitutional rights.' " *State v. Hajicek*, 2001 WI 3, ¶ 14, 240 Wis. 2d 349, 620 N.W.2d 781 (2001).

Trimble had police accompany her on the visit and she wanted officers to handcuff Jones because she had concerns about her safety. In addition to being aware of Jones's history of verbal conflict with prior agents, Trimble was aware that Jones's criminal conviction included a firearms violation. The fact that the door was locked with no key available, coupled with Jones's initial denial that the room was his and his subsequent admission that there was a marijuana pipe in the room raised Trimble's concerns further. In particular, Trimble was concerned that, even though Jones admitted to the marijuana pipe, there may be weapons or other contraband in the room.

¶ 14. Jones's mother, who unsuccessfully attempted to open the door, made it clear to Trimble that she did not want the door damaged. A police officer suggested the use of a locksmith as a means of gaining access. Trimble's supervisor authorized the use of a locksmith, but indicated that DOC would not pay for it. The police department offered to cover the expense. Once the door was open, officers briefly entered Jones's bedroom to make sure that it was free of weapons or anything that might present a danger to Trimble. The police then vacated the room and Trimble searched the premises herself, without police assistance. Trimble collected and inventoried the items and took them back to her office. At that time the police officers were unaware of what items were taken. However, later in the day Trimble turned them over to the police, which is consistent with policy set out in the DOC manual. Jones does not dispute these facts, and we conclude that the court's factual findings are not clearly erroneous.

¶ 15. We conclude, based on the court's factual findings, that the search of Jones's room was a proba-

tionary search and not a police search. Cooperation between a probation officer and law enforcement does not transform a probation search into a police search. *See Hajicek*, 240 Wis. 2d 349, ¶ 32. Indeed, cooperation with law enforcement for the purpose of preventing crime is a specific goal of probation supervision. *Id.*, ¶ 33. A probation search is also not transformed into a police search because the information leading to the search was provided by law enforcement. *Griffin*, 131 Wis. 2d at 57. Nor is a probationary search transformed into a police search due to the existence of a concurrent investigation. *See Hajicek*, 240 Wis. 2d 349, ¶¶ 5, 32. Similarly, the transfer of the items seized to law enforcement following the search does not change the nature of the search itself. The circuit court's findings of historical fact clearly indicate that Trimble was present at Jones's residence in furtherance of her responsibilities as his agent. Trimble, not the police, initiated the search, and Trimble, not the police, conducted the search.

¶ 16. In addition, the facts demonstrate that the officers were present at Jones's residence for protective purposes. This is a recognized example of cooperation between law enforcement and probation agents, and does not render the search a police search. *See Griffin*, 131 Wis. 2d at 63; *Hajicek*, 240 Wis. 2d 349, ¶ 34; *State v. Wheat*, 2002 WI App 153, ¶ 22–23, 256 Wis. 2d 270, 647 N.W.2d 441. Jones contends that, unlike these cases, police participation in the present case "went far beyond staying in their protective role," apparently because an officer initially attempted to open Jones's door after the door closed behind Jones, and then suggested the use of and paid for the locksmith. We disagree. The officers' actions were in furtherance of their professional responsibility to gain access to

Jones's room for the purpose of their protective sweep, followed by Trimble's probationary search. Based on the circuit court's findings, we conclude that the search of Jones's room was a probation search, not a police search.

¶ 17. Jones next contends that even if the search was a probation search, there were no reasonable grounds to conduct the search. Even though probation searches are exempt from the requirement of a warrant, they must nevertheless be reasonable. *Hajicek*, 240 Wis. 2d 349, ¶ 3. The question of whether a search is reasonable is a question of constitutional fact, and we review it independently of the circuit court. *Griffin*, 131 Wis. 2d at 62. However, the circuit court's findings of evidentiary or historical fact relevant to our inquiry will not be upset on appeal unless they are clearly erroneous. *Id.*

¶ 18. A probation officer may search a probationer's residence if the probation officer has reasonable grounds to believe the probationer is in the possession of contraband. Wis. Admin. Code § DOC 328.21(3)(a) (Dec. 2006); *Hajicek*, 240 Wis. 2d 349, ¶ 37. Contraband is defined in Wis. Admin. Code § DOC 328.16(1) (Dec. 2006) as "[a]ny item which the client may not possess under the rules or conditions of the client's supervision; or . . . [a]ny item whose possession is forbidden by law."

¶ 19. Pursuant to Wis. Admin. Code § DOC 328.21(7) (Dec. 2006), an agent may consider several factors in deciding whether there are reasonable grounds to believe that an offender's living quarters contains

contraband. It provides in relevant part that an agent may consider any of the following:

(a) The observations of staff members.

(b) Information provided by informants.

(c) The reliability of the information provided by an informant . . . .

(d) The reliability of the informant . . . .

(e) The activity of the client that relates to whether the client might possess contraband . . . .

(f) Information provided by the client that is relevant to whether the client has used, possesses or is under the influence of an intoxicating substance or possesses any other contraband.

(g) The experience of a staff member with that client or in a similar circumstance.

(h) Prior seizures of contraband from the client.

(i) The need to verify compliance with rules of supervision and state and federal law.

¶ 20. In *Griffin*, 483 U.S. 868, the United States Supreme Court addressed the constitutionality of a warrantless search of a Wisconsin probationer's home pursuant to WIS. ADMIN. CODE § HHS 328.21(7) (May 1986). Rather than determine whether the search itself was constitutional, the Supreme Court held that "[t]he search of Griffin's home satisfied the demands of the Fourth Amendment because it was carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement under well-established principles." *Griffin*, 483 U.S. at 873. Thus, the salient inquiry is whether Trimble's search was

carried out pursuant to WIS. ADMIN. CODE § DOC 328.21(7) (Dec. 2006), which itself satisfies the demands of the Fourth Amendment.

¶ 21. Jones argues that factors (c), the reliability of the information provided by an informant, and (d), the reliability of the informant, are the "only factors that have much import." He acknowledges that because the informant was a police officer, the reliability of the informant was high. However, he challenges the reliability of the information. As we understand Jones's argument, he contends that the fact that Detective Pertzborn was aware of a nude photo of Jones as well as love letters from him in the possession of the victim did not necessarily mean that Jones was, in turn, in possession of a nude photo of the victim, which is the only item that would qualify as contraband within the meaning of WIS. ADMIN. CODE § DOC 328.16(1) (Dec. 2006). Jones concedes that his admission that he had a marijuana pipe in his bedroom "would arguably lead to a reasonable suspicion that he had contraband in the room." He argues, however, that this information did not contribute to Trimble's decision to search his bedroom.

¶ 22. We reject Jones's argument. As the circuit court found, Trimble was told by Detective Pertzborn that Jones was sexually involved with a fourteen-year-old girl and that Pertzborn had knowledge of nude photographs of Jones and love notes from Jones to the girl. Trimble testified that when she went to Jones's home, she understood there were probably nude photographs of the girl in his possession. Further, Jones admitted that he had a marijuana pipe in the room that he was trying to hide. Jones does not dispute these facts, and we are satisfied that the court's factual findings are not clearly erroneous.

¶ 23. The circuit court's findings of historical fact demonstrate Trimble's compliance with the provisions of Wis. Admin. Code § DOC 328.21(7) (Dec. 2006). First, she had received information from a reliable informant. In *Griffin*, 131 Wis. 2d at 62, the Wisconsin Supreme Court concluded that a tip from a police officer that the probationer had or may have had contraband constituted the requisite reasonable grounds to perform a probation search. Thus, this factor alone was sufficient to constitute reasonable grounds for the search. In addition, Trimble's observations of Jones's demeanor prior to the search, coupled with his admission that a marijuana pipe was in his room contributed additional reasonable grounds for the ensuing probation search. Based on the circuit court's findings, we conclude that the search was based on reasonable grounds.

MANNER OF ENTRY

¶ 24. WISCONSIN ADMIN. CODE § DOC 328.21(3)(f) (Dec. 2006) provides that probation or parole agents "may not forcibly enter a locked premises to search it if the client whose living quarters or property it is is not present." Jones argues that the search of his bedroom was not reasonable because use of a locksmith constituted a forced entry in violation of § DOC 328.21(3)(f), and he asserts that this violation compels suppression of the evidence discovered during the search.[5]

¶ 25. The interpretation of an administrative regulation presents a question of law which we review

_____

[5] Because we conclude that Trimble did not violate Wis. Admin. Code § DOC 328.21(3)(f) (Dec. 2006), we do not reach the issue of whether failure to comply with this provision would constitute a Fourth Amendment violation.

de novo. *State v. Brown*, 2006 WI 131, ¶ 18, 298 Wis. 2d 37, 725 N.W.2d 262. An administrative regulation is ambiguous if reasonable people can understand it differently. *State ex rel. Staples v. DHSS*, 136 Wis. 2d 487, 495, 402 N.W.2d 369 (Ct. App. 1987). Jones contends that "forcibly" encompasses the use of an alternative method for opening a door, in this case by a locksmith, in situations where a shut door cannot be opened by a mere turn of the handle. The State, on the other hand, contends that "forcibly" entails some form of damage to the premises. Both are reasonable interpretations of the term, therefore we conclude that the regulation is ambiguous.

¶ 26. Because the regulation is ambiguous, we may look beyond the words of the regulation to determine the intent behind it. *Id.* In this case, an Appendix to WIS. ADMIN. CODE § DOC 328.21 (Dec. 2006) contains explanatory materials which we may look to in order to clarify the meaning of the regulation. *See id*.

■

¶ 27. The Appendix states with regard to WIS. ADMIN. CODE § DOC 328.21(3)(f) that "[t]he agent may enter in any way that does not do damage to the property." WIS. ADMIN. CODE § DOC 328 app. note DOC 328.21 (Dec. 2006). It is clear from the Appendix that the intent of § DOC 328.21(3)(f) is to prohibit agents from causing damage to a locked premises in order gain entry. Jones does not argue that the door to his bedroom was damaged as a result of the locksmith's entry, and we conclude that the use of the locksmith to gain entry was not forcible in violation of § DOC 328.21(3)(f).

## CONCLUSION

¶ 28. We conclude that the search of Jones's bedroom was a reasonable probation search and that the

circuit court did not err in denying Jones's motion to suppress. Accordingly, we affirm Jones's judgment of conviction and the sentences imposed.

*By the Court.*—Judgment affirmed.