COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Frank and Kelsey

JAMES GREGORY LOGAN

OPINION BY
v.          Record No. 0468-06-3          JUDGE D. ARTHUR KELSEY
MARCH 10, 2009

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
David A. Melesco, Judge

S. Jane Chittom, Appellate Defender (Public Defender
Commission, on briefs), for appellant.

Donald E. Jeffrey, III, Assistant Attorney General
(Robert F. McDonnell, Attorney General, on brief), for
appellee.


This case returns to us on remand from the Virginia Supreme Court "for a review of

Logan's challenge to the trial court's determination that the police officer's actions did not

constitute bad faith." Logan v. Commonwealth, 276 Va. 533, 536, 666 S.E.2d 346, 348 (2008).

Having now reviewed that challenge, we find it meritless.

I.

In 2002, the trial court convicted Logan of selling cocaine. A year later, while on

probation, Logan was arrested for possession of cocaine. At trial on the 2003 possession charge,

Logan claimed the exclusionary rule barred the admission of the cocaine because the arresting

officer entered a common area of Logan's rooming house without a warrant. It was in this

common area, a stairway landing, that the officer observed Logan possess cocaine. The trial

court denied the motion to suppress, holding Logan had no reasonable expectation of privacy in

the common areas of the rooming house.

On appeal, two of three judges of a panel of this Court disagreed with the trial court.

Citing State v. Titus, 707 So. 2d 706, 708 (Fla. 1998), the panel majority held "rooming house

residents have an actual expectation of privacy in the common areas of the rooming house" unless the house is open to the general public. Logan v. Commonwealth, 46 Va. App. 213, 221, 616 S.E.2d 744, 747 (2005). The panel majority rejected as "unpersuasive" the contrary holding of United States v. Anderson, 533 F.2d 1210 (D.C. Cir. 1976), which held:

> When the police officers entered the rooming house they did not enter appellant's private dwelling; instead they merely entered the common corridors of the building, which were available to residents of the rooming house, their guests, people making deliveries, and others who had a legitimate reason to be on the premises. Consequently, insofar as appellant maintains that he had a constitutionally protected reasonable expectation of privacy in the corridors of the rooming house, we disagree; appellant's constitutionally protected privacy interest began at the door to room eight rather than at the door to the entire rooming house.

Logan, 46 Va. App. at 223, 616 S.E.2d at 749 (quoting Anderson, 533 F.2d at 1214).

In contrast, the panel dissent found Anderson persuasive and agreed with the trial judge that Logan had no reasonable expectation of privacy in a common area of a multi-tenant rooming house. The Anderson approach, the dissent noted, parallels the view taken by a "majority of federal courts" addressing the analogous context of common areas (and in particular hallways) of apartment buildings. Id. at 232, 616 S.E.2d at 753 (Haley, J., dissenting) (citations omitted).

Upon reviewing the case *en banc*, we focused on a purely factual concession made by the Commonwealth on appeal that the rooming house "was *not* open to the general public." Logan v. Commonwealth, 47 Va. App. 168, 170, 622 S.E.2d 771, 772 (2005) (*en banc*) (emphasis added). On this narrow ground, we reversed the trial court. In our ruling, however, we refused to resolve the split in precedents between the "broad view of the privacy interests associated with rooming houses" (illustrated by Titus) and the "more narrow approach" (best described in Anderson), which refused to find a privacy interest in the common areas of boarding houses. Id. at 171, 622 S.E.2d at 773. "For purposes of this appeal," the *en banc* Court made clear, "we need not endorse or reject either view." Id. "To go further than the Commonwealth's

- 2 -

concession," we explained, "would conflict with two principles of judicial self-restraint: our reluctance to issue what amounts to an 'advisory opinion' on an inessential subject and our corresponding desire to decide the case 'on the best and narrowest ground available.'" Id. at 171 n.3, 622 S.E.2d at 773 n.3 (citations omitted). The case ended there. The Commonwealth did not seek further review by the Virginia Supreme Court.

Back in the trial court, the earlier 2002 conviction returned to the docket to determine whether Logan violated his probation by possessing cocaine. Logan argued the exclusionary rule prohibited the cocaine from being admissible in his probation revocation proceeding for the same reason it was excluded from his criminal trial. The trial court disagreed, as did we. Central to our analysis was the United States Supreme Court's unqualified admonition that it had "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." Penn. Bd. of Probation & Parole v. Scott, 524 U.S. 357, 363 (1998).

The particular "other" non-criminal-trial proceeding in Scott was a state parole revocation hearing. Given the *ratio decidendi* of Scott,[1] we found "no relevant distinction between the Supreme Court's application of the exclusionary rule to parole revocation hearings and our application of the rule to probation violation hearings." Logan v. Commonwealth, 50 Va. App. 518, 524, 651 S.E.2d 403, 406 (2007); see generally Gagnon v. Scarpelli, 411 U.S. 778, 782 & n.3 (1973) (recognizing the "undoubted minor differences between probation and parole," but noting "revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole") (cited in Scott).[2]

---

[1] See generally Congdon v. Congdon, 40 Va. App. 255, 265, 578 S.E.2d 833, 838 (2003) (observing that *stare decisis* "applies not merely to the literal holding of the case, but also to its *ratio decidendi* — the essential rationale in the case that determines the judgment").

[2] See also United States v. Armstrong, 187 F.3d 392, 394 (4th Cir. 1999) (holding that "the reasoning of Scott applies equally to supervised release revocation proceedings as to parole revocation proceedings"); United States v. Hebert, 201 F.3d 1103, 1104 (9th Cir. 2000) ("Scott

The Virginia Supreme Court disagreed, however, and read Scott narrowly to apply only to parole revocation — but not probation revocation — proceedings. Logan, 276 Va. at 536, 666 S.E.2d at 347-48. This interpretation of Scott left standing a pre-Scott ruling in Anderson v. Commonwealth, 251 Va. 437, 440, 470 S.E.2d 862, 863 (1996), which held the exclusionary rule applies to probation violation proceedings if the defendant proves "bad faith on the part of the police." The case was remanded to us "for a review of Logan's challenge to the trial court's determination that the police officer's actions did not constitute bad faith." Logan, 276 Va. at 536, 666 S.E.2d at 348.

II.

Since the remand of this case to us, the United States Supreme Court decided Herring v. United States, 129 S. Ct. 695 (2009). Clarifying the scope of the exclusionary rule, Herring held the "fact that a Fourth Amendment violation occurred — *i.e.*, that a search or arrest was unreasonable — does not necessarily mean that the exclusionary rule applies." Id. at 700. Because "the exclusionary rule is not an individual right," prior precedent had "repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation." Id.

"To trigger the exclusionary rule," Herring held, the challenged "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Id. at 702. This case-specific,

applies equally to suppression of evidence in federal supervised release proceedings"); State v. Martin, 595 N.W.2d 214, 216 (Minn. Ct. App. 1999) (applying Scott to probation revocation proceeding because there is "no material distinction between the probation and parole systems"); Commonwealth v. Lehman, 851 A.2d 941, 943 (Pa. Super. Ct. 2004) (finding Scott applicable to probation violation because "the constitutional rights of a parolee are indistinguishable from those of a probationer"); State v. Jarman, 987 P.2d 1284, 1287 (Utah Ct. App. 1999) (concluding "we are bound by Scott" and holding the exclusionary rule "does not apply in the context of probation revocation proceedings"); State v. Wheat, 647 N.W.2d 441, 447 (Wis. Ct. App. 2002) (noting Scott and finding "little reason to distinguish between illegally obtained evidence leading to a parole revocation proceeding and illegally obtained evidence leading to a probation search").

two-pronged test — requiring both deliberateness and culpability — serves as a prerequisite for the application of the exclusionary rule.

Herring also deemphasized any subjectivity from the deliberateness-and-culpability test. "The pertinent analysis of deterrence and culpability is objective, not an 'inquiry into the subjective awareness of arresting officers.'" Id. at 703 (citation omitted). That is, the "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances." Id. (citation omitted).[3] "These circumstances frequently include a particular officer's knowledge and experience, but that does not make the test any more subjective than the one for probable cause, which looks to an officer's knowledge and experience, but not his subjective intent." Id. (citation omitted).[4]

The circumstances of Logan's case fall far short of the Herring standard. Logan does not contest that he possessed cocaine in a common area (a stairway landing) of his rooming house. Rather, his complaint is that a police officer was there to see it. Recognizing that this was a matter of first impression in Virginia, a splintered panel of our Court could not address the subject with either unanimity or finality. Relying on a Florida decision, Titus, the panel majority agreed with Logan. Relying on a decision of the United States Court of Appeals of the District of Columbia, Anderson, as well as a battery of cases addressing the analogous context of apartment buildings, the panel dissent disagreed with Logan. Sitting *en banc*, we endorsed

---

[3] The Commonwealth correctly frames the issue before us in just these terms: "[T]he sole issue before this Court is whether an objectively reasonable officer in [the arresting officer's] position could have believed that the defendant had no reasonable expectation of privacy in the hallway where [the officer] observed the illegal activity." Appellee's Br. at 9 (emphasis omitted).

[4] The objective standard parallels the general approach applied to Fourth Amendment issues. For purposes of assessing the objective legality of an officer's actions, his "subjective motivation is irrelevant." Robinson v. Commonwealth, 273 Va. 26, 37, 639 S.E.2d 217, 223 (2007) (quoting Brigham City v. Stuart, 547 U.S. 398, 404 (2006)).

neither the narrow nor the broad view, finding instead that the Commonwealth's factual concession on appeal had mooted the legal debate.

The very presence of a principled disagreement among our colleagues on this issue strongly militates against the conclusion that a "reasonably well trained officer," Herring, 129 S. Ct. at 703, would have known that Logan had a reasonable expectation of privacy in a stairway within a common area of a multi-tenant rooming house. To be sure, in cases where experienced jurists disagree among themselves as to the legality of the police conduct, we can hardly expect law enforcement officers to predict which contesting juristic view will ultimately prevail and become binding precedent. In such situations, it would be hyperbolic to accuse police officers of bad faith when they merely guess wrong. See United States v. Leon, 468 U.S. 897, 926 (1984) (noting that because the legal question created "disagreement among thoughtful and competent judges," the judicial application of the "extreme sanction of exclusion is inappropriate").

We similarly reject Logan's assertion that our *en banc* opinion requires a finding of bad faith and, therefore, application of the exclusionary rule. We limited our holding to the Commonwealth's factual concession, made on appeal, that the rooming house (including its common area stairways) was not open to the public — thus establishing Logan's reasonable expectation of privacy. But we never held the police officer knew or should have known of that newly conceded fact. To the contrary, the officer testified he had previously been "inside the rooming house" and did not see any signs suggesting it was not open to the public. Logan, 46 Va. App. at 218, 616 S.E.2d at 746 (superseded panel opinion).[5] That he was mistaken, however, does not mean he acted in bad faith.

---

[5] We likewise reject Logan's argument on brief that the Commonwealth waived any right to argue good faith by abandoning the argument on appeal that the officer reasonably mistook Logan for another man wanted on a warrant. Appellant's Br. at 10-12. Neither the Commonwealth's argument, see Appellee's Br. at 8, nor our holding turns on the strength or accuracy of the officer's identification of Logan.

III.

In sum, the remand mandate instructed us to review "Logan's challenge to the trial court's determination that the police officer's actions did not constitute bad faith." Logan, 276 Va. at 536, 666 S.E.2d at 348. Considering Logan's challenge in light of Herring, we affirm the trial court's finding that the officer's actions did not warrant excluding the cocaine evidence offered during Logan's probation violation hearing.

Affirmed.