PER CURIAM.
¶1 The State appeals a decision of the Dane County Circuit Court granting Julian Thomas's motion to suppress evidence collected during a search of Thomas's living quarters by probation agents. The circuit court concluded that the search was an unconstitutional police search rather than a probation search. We disagree with the circuit court and conclude that the search of the house in which Thomas was then living was a probation search and that the search was reasonable. In addition, we conclude that Thomas has failed to support an argument that the method of entry to the residence was improper. As a result, we reverse the circuit court's order and remand the matter for further proceedings.
BACKGROUND
¶2 The following facts are not in dispute and are gleaned from the record.
¶3 In August 2015, a McFarland woman's purse and her credit cards were stolen. McFarland Police Department Detective Michael Klementz started an investigation and learned that one of the stolen credit cards was used at stores in Beloit, Madison, and Rockford, Illinois. Klementz contacted one of those stores, and the store provided to him video footage of the person who used the credit card. It showed a black male wearing a Chicago White Sox baseball cap, dark-colored sweatpants with "HG32" written across the front in large white lettering, and a black t-shirt with a rectangular white box across the front of the shirt.
¶4 On September 1, 2015, Probation Agent Michael Ellestad attempted to conduct a home visit at the residence of one of his probationers, Julian Thomas. However, Ellestad discovered that Thomas had changed residences about a month earlier. Ellestad contacted Thomas by phone, and Thomas explained that he was now living on Bonner Road in Madison in a house where his sister also resided. On September 1, 2015, Ellestad arranged a home visit with Thomas at the new residence to be conducted on September 3, 2015.
¶5 A Wisconsin Crime Alert Network bulletin was sent on September 2, 2015 with still images of the store video footage showing a person who used the stolen credit card mentioned above. On that same date, Ellestad received the bulletin and recognized the person in the photos as Thomas.
¶6 Later that same day, Ellestad contacted his supervisor and the two put together a plan to obtain additional information before conducting a search of Thomas's living quarters. Ellestad and his supervisor agreed that Ellestad should proceed with the already-scheduled September 3 home visit during which Ellestad could look for anything in plain sight that might connect Thomas with the theft of the credit card.
¶7 As planned, on September 3, 2015, Ellestad conducted the scheduled home visit at the Bonner Road residence. As part of a tour given by Thomas, Ellestad went into the basement of the residence where Thomas was living. Ellestad observed, on the top of a laundry pile, sweatpants with a large "HG32" printed on them. This matched the sweatpants seen in the photos with the Wisconsin Crime Alert Network bulletin.
¶8 Evidence of a rule violation is a proper justification for a search of a probationer's living quarters by a probation agent.[1] When Ellestad returned to his office, he drafted a search plan and completed Form DOC 2221, which probation agents are required to complete prior to conducting a probation search. Ellestad submitted the form to his supervisor, and his supervisor reviewed it with her superiors, who approved it.
¶9 After receiving approval for the search, Ellestad contacted two other probation agents who agreed to assist in the search. Ellestad also informed Detective Klementz of the incriminating evidence he saw during the September 3 home visit and suggested that Klementz accompany him on the search. The search was organized by Ellestad, but Klementz agreed to go with Ellestad in the event that, if Thomas was located, Klementz could talk to Thomas regarding the case that Klementz was investigating and collect any evidence Agent Ellestad might find related to that case. Additionally, Ellestad wanted Klementz to be present for the search to secure the residence and to provide security.
¶10 Agent Ellestad, along with the other probation agents and Detective Klementz, then went to the Madison Police North District to brief local police about the search. At that time, the Madison police informed Ellestad that Thomas left his residence with a female and was on the west side of Madison. Ellestad requested that the Madison police take Thomas into custody because Ellestad knew that Thomas did not have a valid driver's license and knew that Thomas's van plates were not valid. Madison police took Thomas into custody and brought him to the North Precinct, where Ellestad spoke to him. Ellestad informed Thomas that a search would be conducted at Bonner Road, but Thomas told him he did not have a key to the residence.
¶11 Ellestad, the two other probation agents, Detective Klementz, Officer Miller of the McFarland Police Department, and two Madison police officers went to the residence on Bonner Road. On their own initiative, two FBI agents who were investigating Thomas for an armed robbery (unrelated to the McFarland credit card theft) were also on the scene. Upon arriving at the residence, Ellestad knocked on doors and windows for about fifteen minutes with no answer. Ellestad knew that Thomas was in custody, but Ellestad was concerned that other people might be in the residence because he knew Thomas did not live there alone.
¶12 After receiving no response from anyone who might be in the residence, Ellestad noticed an open bathroom window at the back of the house. The window had a screen that was on a roller. Ellestad rolled the screen to the side, stuck his head in, and asked if there was anybody in the residence. After receiving no answer, Ellestad directed one of the other probation agents to climb in through the bathroom window. The other agent did so and, from within the house, unlocked a door to the outside.
¶13 Law enforcement officers entered through the now-unlocked door and conducted a sweep to determine whether anyone was present in the house, and they found no one. The other probation agents searched the common areas upstairs while Ellestad searched Thomas's living quarters in the basement. In conducting the search of Thomas's living quarters, Ellestad found sweatpants, a shirt, and a baseball cap matching the items seen in the photos sent with the Wisconsin Crime Alert Network bulletin on September 2, 2015. When Ellestad found what he believed was evidence of a probation violation by Thomas, he gave it to the police for photographing and collection. Once Ellestad determined that the search was over, everyone left the residence at the same time. Ellestad then completed the required DOC paperwork regarding the search and submitted it to his supervisor.
¶14 The State charged Thomas in this case, as a repeat offender, with three counts of felony identity theft. Thomas filed a motion to suppress the evidence obtained from the search of his residence. Only Ellestad and Detective Klementz testified at the hearing on that motion.
¶15 The circuit court granted Thomas's motion to suppress the use of all evidence seized during the search of his living quarters. The circuit court concluded that the home search was an "unconstitutional overreach of parole authority," and that to excuse "the actions taken by Agent Ellestad would defeat the Court's inherent sense of fairness and give rise to unacceptable constitutional implications."
¶16 The court made the following additional observations:
• The initial home visit of September 3, 2015 "took place within hours of photos circulating and was basically a pretense for a police investigation."
• By arranging to meet with Detective Klementz to discuss the investigation, Agent Ellestad was able to "tailor his home visit to serve police objectives."
• "[T]he sheer number of officers involved in this search suggests that it was a police investigation."
• The "more appropriate course of action would have been for Agent Ellestad to convey information to the police and allow them to obtain a valid warrant" for the search.
• A "forced entry" was not justified by "any evidence of urgency or exigent circumstances or potential for the property to be destroyed."
¶17 Other relevant background will be mentioned in the discussion, below.
¶18 The State appeals the circuit court's decision granting Thomas's motion to suppress.
DISCUSSION
¶19 The State argues that the circuit court erred in suppressing the evidence obtained from the search of Thomas's living quarters. We address three separate issues. First, was this a police search or a probation search? Second, was the search reasonable? Third, was the method of entering the residence improper?
I. Probation Search or Police Search?
¶20 We conclude that the search was a probation search of Thomas's living quarters.
A. Standard of Review.
¶21 "Whether a search is a police or a probation search is a question of constitutional fact which 'requires a conclusion based on an analysis of all the facts surrounding the search.' " State v. Devries , 2012 WI App 119, ¶3, 344 Wis. 2d. 726, 824 N.W.2d 913 (quoting State v. Hajicek , 2001 WI 3, ¶¶14 and 23, 240 Wis. 2d 349, 620 N.W.2d 781 ). A circuit court's findings of historical facts are examined under the clearly erroneous standard, while the circuit court's conclusion that the search was a police search is reviewed de novo. Hajicek , 240 Wis. 2d. 349, ¶15.
B. Analysis.
¶22 We begin with Thomas's argument that Ellestad was only a "stalking horse" for law enforcement. As noted, the circuit court observed that, in meeting with law enforcement to discuss the investigation, Ellestad was able to tailor his search "to serve police objectives."
¶23 A "stalking horse" is "[s]omething used to cover one's true purpose; a decoy." Id. , ¶22. In this context, a "stalking horse" is a "probation officer who uses his or her authority 'to help the police evade the [F]ourth [A]mendment's warrant requirement.' " Id. But, "a probation officer cannot be a 'stalking horse' of law enforcement if the probation officer instigated the search." State v. Wheat , 2002 WI App 153, ¶21, 256 Wis. 2d 270, 647 N.W.2d 441. Here, there is no dispute that the search was instigated by the probation agent.
¶24 That Ellestad was tipped off about Thomas's alleged crime by the Wisconsin Crime Alert Network bulletin does not affect our conclusion. A search is not "rendered unlawful merely because law enforcement provided some of the information that led to the search" by the probation agents. See Id. (citing State v. Flakes , 140 Wis. 2d 411, 427, 410 N.W.2d 614 (Ct. App. 1987) ). Although Ellestad contacted law enforcement requesting their assistance in the search, the nature of the search instigated by Ellestad did not change after he met with police officers. Because Agent Ellestad instigated the search, planned the search, and he and the other probation agents carried out the search, we conclude that Ellestad was not acting as a stalking horse for the police and this was a probation search, not a police search.
¶25 Moreover, cooperation with a law enforcement investigation does not transform a probation search into a police search. Hajicek , 240 Wis. 2d 349, ¶32. Indeed, "[c]ooperation with law enforcement for the purpose of preventing crime is a specific goal of probation supervision." Id. , ¶33. Ellestad and the probation officers, not the police officers, searched the home. Police officers were present for security purposes and merely photographed and collected evidence the probation officers found during the search. For these reasons, Ellestad's cooperation with law enforcement did not transform the search from a probation search into a police search. See Id. , ¶¶33 and 34.
¶26 Thomas argues that the circuit court was correct in concluding that, because the "initial home visit took place within hours of photos circulating," therefore the search was a "pretense" for a "police investigation." We disagree that the timing of the September 3, 2015 initial visit by Ellestad to Thomas's living quarters supports the conclusion that it was a pretense for a police search on a later date.
¶27 We have summarized above the pertinent, undisputed facts which make clear that it was only after the unsuccessful home visit of September 1 and the home visit of September 3 that Ellestad started the wheels in motion for a probation search, and the September 3 meeting was set up on September 1, before Ellestad knew anything about the photographs that incriminated Thomas. Accordingly, we conclude that the September 3 visit was not a pretense for a later police investigation and police search of Thomas's living quarters.
¶28 Thomas further contends, and the circuit court agreed, that the "sheer number" of law enforcement officers present during the search made it a police search. The question is whether the number of officers present made this a police search. See Hajicek , 240 Wis. 2d 349, ¶15.
¶29 Here, the police did not participate in the search of the residence or instigate the search. Rather, the search was planned and executed by probation agents to search for evidence of a probation rule violation. Thomas does not explain how the "sheer number" of officers present dictates whether this was a police search or a probation search. We reject Thomas's contention because the controlling factor is that probation agents planned and carried out the search. See Wheat , 256 Wis. 2d 270, ¶¶21-23.
¶30 In sum, we conclude that this was a probation search and not a police search. We now determine whether the probation search was reasonable.
II. Was the Search Reasonable?
¶31 The Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution protect the right to be free from unreasonable searches.[2] State v. Dearborn , 2010 WI 84, ¶14, 327 Wis. 2d 252, 786 N.W.2d 97. Violation of the Fourth Amendment because of an unlawful search or seizure can result in the suppression of evidence pursuant to the exclusionary rule. Id. A warrantless search is per se unreasonable unless it falls within a clearly delineated exception. State v. Artic , 2010 WI 83, ¶29, 327 Wis. 2d 392, 786 N.W.2d 430. The State bears the burden of proving that an exception applies to any given search. Hajicek , 240 Wis. 2d 349, ¶35. One such exception is a probation search. Griffin v. Wisconsin , 483 U.S. 868, 875-76 (1987).
¶32 All searches and seizures, including probation searches, must be reasonable. Hajicek , 240 Wis. 2d 349, ¶35 (citing U.S. CONST. amend. IV ; WIS. CONST. art. I, § 11 ). Whether a search is reasonable is a question of constitutional fact, and it is reviewed independently of the circuit court. State v. Jones , 2008 WI App 154, ¶17, 314 Wis. 2d 408, 762 N.W.2d 106. However, the circuit court's findings of evidentiary fact "will not be upset on appeal unless they are clearly erroneous." Id.
¶33 "A probation agent's search of a probationer's property satisfies the reasonableness requirement of the Fourth Amendment if the probation agent has 'reasonable grounds' " for the search of the probationer's living quarters. See State v. Purtell , 2014 WI 101, ¶33, 358 Wis. 2d 212, 851 N.W.2d 417 ; Hajicek , 240 Wis. 2d 349, ¶37. "Reasonable grounds" has been interpreted to be less demanding than the probable cause standard. Purtell , 358 Wis. 2d 212, ¶26. Wisconsin Administrative Code regulations for the supervision of probationers provide a list of factors to be considered in determining whether there are reasonable grounds for a search of a probationer's residence. Hajicek , 240 Wis. 2d 349, ¶¶37 and 40 ; Flakes , 140 Wis. 2d at 427-28.
¶34 We conclude that there were reasonable grounds for a probation search of Thomas's living quarters based on the factors provided in the Wisconsin Administrative Code. WISCONSIN ADMIN. CODE § DOC 328.22(2)(a) states that a search is appropriate when "a [probation agent] has reasonable grounds to believe the offender possesses contraband or evidence of a rule violation." Violation of federal law or a state statute is a rule violation. WIS. ADMIN. CODE § DOC 328.04(3)(a). Ellestad saw evidence of a rule violation during his September 3 home visit. Specifically, Ellestad saw the clothes in Thomas's bedroom that matched clothes shown in still images of Thomas when he was using the credit cards illegally. For that matter, Ellestad had seen the recently captured image of a person he believed to be Thomas allegedly using a stolen credit card, which in itself provided reasonable grounds to believe Thomas had contraband or evidence of a rule violation within his living quarters. For those reasons, we conclude that there were reasonable grounds for the probation search.[3]
¶35 Next, it appears Thomas may also be challenging the reasonableness of the search because, as the circuit court concluded, the State could have obtained a search warrant. But, Thomas makes no discernable argument in this regard and only cites to the conclusion of the circuit court. We reject this underdeveloped argument on the merits. The State could have obtained a search warrant, but that is beside the point. Thomas does not cite to any authority which concludes that, when a probation agent has sufficient information to obtain a judicial warrant to search a probationer's quarters, that then negates the legality of a probation search based on reasonable grounds. Indeed, this argument was rejected by the United States Supreme Court regarding the reasonableness of a probation search in Wisconsin. See Griffin , 483 U.S. at 875-80. Therefore, we reject Thomas's contention that, because law enforcement officers could have obtained a search warrant for Thomas's living quarters, that is a reason to deem the probation search unreasonable.
¶36 For those reasons, we conclude that the search of Thomas's living quarters was reasonable.
III. Was the Method of Entry Improper?
¶37 Finally, Thomas asserts that the method of entry into the premises where he lived was improper. One of the probation agents went in through an open window after rolling back a screen and, once inside the residence, unlocked the door to allow the probation agents and law enforcement agents to enter the residence. Thomas's assertions on this issue are difficult to discern. Nonetheless, we make the following observations.
¶38 Many of Thomas's contentions regarding the method of entry by the probation agent relate to 2013 Wis. Act 79, § 9, now codified at WIS. STAT. § 973.09(1d) (2015-16).[4] But, the parties agree that § 973.09(1d) cannot apply to Thomas. The statute applies only to persons placed on probation after the date Thomas began his term of probation. Also, the statute applies to persons on probation for certain crimes, and Thomas was not sentenced for any such crime. As a result, we reject any contention that the new statute is a basis to conclude the entry into the premises was improper.
¶39 At the circuit court level, the parties discussed whether there was "forced entry" into the premise by the probation agent. WISCONSIN ADMIN. CODE § DOC 328.22(7)(d) states: "An employee may not forcibly enter any property to conduct a search." However, in this court, Thomas has stated that, in the context of the DOC regulations, "whether or not 'forced entry' occurred is irrelevant." Without "forced entry" as a part of his argument, Thomas has no basis to rely on § DOC 328.22(7)(d). Therefore, we conclude that Thomas has failed to support any contention regarding § DOC 328.22(7)(d), and we need not determine whether it applies in this factual situation.
¶40 Thomas's only other related assertion is the following: "What the defense asserts to the Court is the Court needs to look at the issue of reasonableness of the unlawful entry." But, Thomas proffers no DOC regulation, or any other authority, which requires that the method of entry to the living quarters of a probationer be "reasonable" and Thomas attempts no definition of that term in these circumstances. So, we conclude that Thomas has failed to explain any reasoning for this contention and reject any argument that Thomas may intend to make along those lines.
¶41 In sum, we conclude that Thomas has failed to support any contention that the method of entry to the residence was improper.
CONCLUSION
¶42 For the foregoing reasons, we conclude that the search of Thomas's living quarters was a probation search, the search was reasonable, and Thomas has failed to provide us with a developed legal argument supporting the conclusion that the method used to gain entry to the residence was improper. Therefore, the circuit court's suppression order is reversed, and this matter is remanded for further proceedings consistent with this opinion.
By the Court. -Order reversed and cause remanded.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

It is a violation of the rules of probation for a probationer to violate federal law or a State statute. See Wis. Admin. Code § DOC 328.04(3)(a) (March 2017). Wisconsin Admin. Code § DOC 328.22(2)(a) states that a search of a probationer's living quarters is appropriate when a probation agent "has reasonable grounds to believe the offender possesses contraband or evidence of a rule violation on or within his or her person or property." The current versions of the relevant Wisconsin Administrative Code sections were effective July 1, 2013.

In Wisconsin courts, Wis. Const. art. I, § 11 is ordinarily interpreted in accordance with the United States Supreme Court's interpretation of the Fourth Amendment. State v. Phillips , 218 Wis. 2d 180, 195, 577 N.W.2d 794 (1998).

Thomas does not contend that the information Ellestad relied on to determine there were reasonable grounds for the search (the images sent by law enforcement in the Wisconsin Crime Alert Network bulletin, together with the incriminating evidence in the living quarters) was unreliable. See State v. Hajicek , 2001 WI 3, ¶¶27 and 35, 240 Wis. 2d 349, 620 N.W.2d 781.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.