COURT OF APPEALS
DECISION
DATED AND FILED

July 23, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2018AP1349-CR**

Cir. Ct. No. **2015CF2419**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JOVAN T. MULL,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  JONATHAN D. WATTS and JEFFREY A. CONEN, Judges. *Reversed and cause remanded for further proceedings*.

Before Brash, P.J., Kloppenburg and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jovan Mull was convicted of first-degree reckless homicide after a jury trial. Mull argues that the circuit court erroneously denied without a hearing his postconviction motion alleging multiple instances of ineffective assistance of trial counsel.[1] We conclude that Mull's postconviction motion alleges facts that entitle him to a *Machner*[2] hearing on only two of his ineffective assistance of trial counsel allegations: (1) failing to seek admission of a third-party perpetrator defense and to present evidence of possible third-party perpetrators; and (2) failing to move to strike or for a mistrial following hearsay testimony elicited on cross-examination of one of the State's witnesses. Accordingly, we reverse and remand to the circuit court for a *Machner* hearing on those allegations only.[3]

## BACKGROUND

¶2 In the early morning hours of March 7, 2015, a fight broke out at a house party at the Milwaukee residence of E.W. According to one witness's account, between fifty and sixty people were in the house during the fight. E.W. attempted to intervene in the fight and pulled some of the combatants into a bedroom. Someone outside the bedroom then fired multiple gunshots through the

---

[1] The Honorable Jonathan D. Watts presided over trial and entered the judgment of conviction. The Honorable Jeffrey A. Conen entered the order denying Mull's postconviction motion.

[2] *See* **State v. Machner**, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) (providing for an evidentiary hearing at which the circuit court may take evidence and weigh credibility of witnesses to assess a defendant's ineffective assistance of trial counsel claims).

[3] Mull also argues that he is entitled to a new trial in the interest of justice, based effectively on the errors discussed in his ineffective assistance of counsel claims. Because we remand for a *Machner* hearing on certain of those claims, it would be premature for us to address this argument. Accordingly, we do not consider this argument further.

closed bedroom door. The shots passed through the bedroom door and hit E.W., who later died of her injuries.

¶3 After an investigation spanning multiple weeks, law enforcement identified Mull as the shooter. The State charged Mull with one count of first-degree reckless homicide. A four-day jury trial ensued. At trial, Mull argued that a reasonable doubt existed as to the identity of the shooter, and the bulk of the evidence and argument offered at trial centered on the question of identity. We summarize the evidence pertinent to the question of the shooter's identity in some detail in the discussion below. Here, it suffices to state that the jury found Mull guilty as charged.

¶4 Mull filed a postconviction motion, in which he alleged that he had received ineffective assistance of trial counsel in multiple respects.[4] The circuit court denied the motion without an evidentiary hearing. Mull appeals.

## DISCUSSION

¶5 Mull alleges that his trial counsel was ineffective for: (1) failing to seek admission of a third-party perpetrator defense and to present evidence of possible third-party perpetrators, including the testimony of five specific witnesses; (2) committing multiple errors during the direct and cross-examination of witness Cheyenne Pugh; and (3) inadequately cross-examining witness

---

[4] Mull's postconviction motion also alleged that the State had failed to disclose certain material evidence in violation of the principles described in *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Mull does not renew that issue on appeal and, therefore, he has abandoned the issue on appeal.

3

Vashawn Smyth.[5]   Mull argues that the circuit court erred in rejecting these allegations without a ***Machner*** hearing.  We conclude that Mull is entitled to a ***Machner*** hearing on:  (1) his first allegation that trial counsel failed to seek admission of a third-party perpetrator defense and to present evidence of possible third-party perpetrators, including the proffered testimony of the five witnesses identified in his motion; and (2) the part of his second allegation that trial counsel failed to take corrective action following Cheyenne Pugh's statement on cross-examination to the effect that Mull had bragged about shooting E.W.  We also conclude that Mull has not met his burden with respect to the remaining allegations.

¶6      We first summarize the law related to ineffective assistance of trial counsel claims and then address each of Mull's allegations of ineffective assistance in turn.

## I.    Law Relating to Ineffective Assistance of Trial Counsel Claims

¶7      Our supreme court has summarized the ineffective assistance of counsel standards as follows:

> Whether a defendant was denied effective assistance of counsel is a mixed question of law and fact.  The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct

---

[5] Mull in his briefing separates his allegation as to the third-party perpetrator defense from his allegation as to the five witnesses.  He alleges in his postconviction motion that these witnesses would provide specific testimony in support of Mull's theory that someone other than Mull was the shooter.  Because the testimony that Mull alleged these witnesses would provide could support a third-party perpetrator defense, we consider his ineffective assistance allegation as to a third-party perpetrator defense to embrace his allegation as to these five witnesses.  Thus, we do not address any arguments made as to these five witnesses separately from the third-party perpetrator defense arguments.

constitutes ineffective assistance is a question of law, which we review *de novo*. To demonstrate that counsel's assistance was ineffective, the defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial. If the defendant fails to satisfy either prong, we need not consider the other.

Whether trial counsel performed deficiently is a question of law we review *de novo*. To establish that counsel's performance was deficient, the defendant must show that it fell below "an objective standard of reasonableness." In general, there is a strong presumption that trial counsel's conduct "falls within the wide range of reasonable professional assistance." Additionally, "[c]ounsel's decisions in choosing a trial strategy are to be given great deference."

Whether any deficient performance was prejudicial is also a question of law we review *de novo*. To establish that deficient performance was prejudicial, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*State v. Breitzman*, 2017 WI 100, ¶¶37-39, 378 Wis. 2d 431, 904 N.W.2d 93 (internal citations omitted and italics added).

¶8     To prevail on a claim of ineffective assistance of trial counsel, a defendant must present the testimony of trial counsel at a postconviction hearing, known as a *Machner* hearing. *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). However, not every postconviction motion alleging ineffective assistance of trial counsel requires a *Machner* hearing. *State v. Allen*, 2004 WI 106, ¶10, 274 Wis. 2d 568, 682 N.W.2d 433. The standard for whether a defendant is entitled to a *Machner* hearing is summarized as follows:

Whether a defendant's postconviction motion alleges sufficient facts to entitle the defendant to a hearing for the relief requested is a mixed standard of review. First, we determine whether the motion on its face alleges sufficient material facts that, if true, would entitle the

5

> defendant to relief. This is a question of law that we review *de novo*. If the motion raises such facts, the circuit court must hold an evidentiary hearing. However, if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing.

*Allen*, 274 Wis. 2d 568, ¶9 (internal citations omitted and italics added). To provide nonconclusory allegations, a postconviction motion must present the "who, what, where, when, why, and how" with sufficient particularity for the circuit court to meaningfully assess the claim of ineffective assistance. *Id.*, ¶23. Further, a circuit court may not deny a motion for a hearing based on the proposition that the allegations "seem to be questionable in their believability," because credibility "is best resolved by live testimony." *Id.*, ¶12 n.6 (citation omitted).

## II. Ineffective Assistance of Trial Counsel Allegation One: Third-Party Perpetrator Defense and Evidence of Possible Third-Party Perpetrators

¶9 Mull alleges that trial counsel was ineffective for failing to seek admission of a third-party perpetrator defense and to present evidence of possible third-party perpetrators. Specifically, Mull alleges that trial counsel was ineffective for not introducing evidence that one of three different individuals may have been the shooter—Vashawn Smyth,[6] Tyler Harris, or Menjuan Bankhead.

¶10 To admit evidence of a third-party perpetrator, "[i]t is the defendant's responsibility to show a *legitimate* tendency that the alleged third-

---

[6] The parties and the circuit court use the spelling "Vashawn Smith," but at trial he spelled his name as "Vashawn Smyth." We use his spelling of his name.

party perpetrator committed the crime." ***State v. Wilson***, 2015 WI 48, ¶59, 362 Wis. 2d 193, 864 N.W.2d 52. Whether a defendant has met the burden to show a legitimate tendency is governed by a three-part inquiry:

> In order to present evidence and make argument suggesting that a third party may have committed the charged crime, a defendant must show that the third party had (1) opportunity; (2) motive; and (3) a direct connection to the crime that is not remote in time, place or circumstances.

***State v. Vollbrecht***, 2012 WI App 90, ¶25, 344 Wis. 2d 69, 820 N.W.2d 443 (citing ***State v. Denny***, 120 Wis. 2d 614, 624-25, 357 N.W.2d 12 (Ct. App. 1984)). Each of these three prongs should be analyzed in light of the others; strong evidence implicating the third-party perpetrator on one prong may affect the evaluation of the other prongs. *Id.*, ¶26; ***Wilson***, 362 Wis. 2d 193, ¶¶53, 64. A circuit court's decision whether to allow evidence under this standard is discretionary. ***Vollbrecht***, 344 Wis. 2d 69, ¶25.

¶11 We first summarize the relevant evidence presented at trial and next describe the additional evidence that Mull alleges trial counsel should have presented to support a third-party perpetrator defense. Taking these sets of evidence together, and taking the allegations in the postconviction motion as true, we then conclude that Mull has shown that he is entitled to a ***Machner*** hearing on the alleged ineffective assistance of trial counsel for failing to present a third-party perpetrator defense and to present evidence of possible third-party perpetrators.

### A. Relevant Trial Evidence

¶12 All of the witnesses who testified at trial were called by the State. The following is a summary of the testimony of the witnesses pertinent to the identity of the shooter, omitting testimony by witnesses who addressed other

issues or whom the parties have not identified as providing pertinent evidence on appeal.[7] As stated, the shots were fired through a bedroom door during a fight at a house party in the early morning hours of March 7, 2015.

¶13 Cheyenne Pugh testified as follows. She did not attend the party and learned of E.W.'s death in a phone call later on the day of the shooting. That same day, Pugh received electronic messages from an individual she did not know personally, which stated that an individual named Vashawn Smyth had shot E.W. Later, Pugh received a text message from an unidentified sender, which contained a picture of Mull and identified Mull as the shooter. Pugh received a second text message from a different sender, Kia Wade, which contained a picture of Mull and stated that Mull "was in the hood bragging about" shooting E.W. Pugh attended a vigil for E.W., where "everybody" was saying that Mull had shot E.W.[8]

¶14 Vashawn Smyth testified as follows. At the party, another partygoer bumped into him, which triggered the fight that preceded the shooting, and he participated in that fight. He saw "a couple people with guns" at the party. Specifically, he saw Mull with a gun, and he saw another individual named Tyler Harris with a gun. Mull was wearing a blue hooded sweatshirt. Smyth heard shots, but he did not see the shooting. "[A]fter the fight," Smyth saw Mull pointing a gun "towards the living room."

---

[7] The parties' briefs, the testimony during trial, and the reports of the police investigation all frequently refer to individuals by their nicknames or aliases. As there appear to be no disputes concerning which persons should be associated with which nicknames, we will refer to all individuals by their official names.

[8] The admissibility of Pugh's testimony is an issue on appeal and will be discussed in more detail below. We include it here solely for the purpose of summarizing the trial evidence pertinent to the third-party perpetrator defense issue.

¶15    Sanchez Harris testified as follows.  He drove to the party with his two brothers and a friend.  Along the way, they offered a ride to Mull, although they did not personally know him.  Mull was wearing a red Wisconsin Badgers sweatshirt.  Mull said that he had a gun with him.  Sanchez Harris knew two people who participated in the fight at the party, Smyth and Menjuan Bankhead.  At the party, prior to the shooting, Sanchez Harris saw an individual with a gun; the individual's hair was in dreads and the individual wore a red "hoody."

¶16    Sanchez Harris then testified that he saw a person with dreads and a red hoody and wearing "red Rock Revival" pants shoot five times through the bedroom door.  He later testified that he did not "really see the face" of the shooter, but saw only the dreads and the red hooded sweatshirt.  He also testified that he did not actually see the shooting.

¶17    Sanchez Harris testified that after the shooting, he left the party with Mull.  He later told police investigators that as they left, Mull told him and his brothers, "You better not say anything.  I know your faces."  On or about March 25, 2015, police showed Sanchez Harris a photo array. He identified Mull as the shooter, but he had already seen a photo of Mull in association with the shooting prior to being shown the police photo array.

¶18    Alphonso Carter testified as follows.  He was at the party and saw that two individuals were carrying guns.  He saw three people standing outside the bedroom door as the shots were fired.  He heard one of the three say, "Shoot in there."  He saw one person shoot at the door.  Carter testified that he saw Mull "shooting in the room."  He later testified that there were several people between him and the shooter, and he did not recognize the shooter.  Carter was unsure, but believed the shooter "was wearing a white shirt and blue jeans" and had dreads.

Carter viewed a police photo array on March 28, 2015, during which he identified Mull as the shooter, "[b]ecause everybody else [in the array] didn't look anything like [the shooter] at all."

¶19    Desmand Butler testified as follows. He was at the party and participated in the fight leading up to the shooting. He saw one person shoot in the direction of the bedroom door. The shooter was roughly five feet in front of him, but he did not recognize the shooter. The shooter had dreads and was wearing a red Wisconsin Badgers sweatshirt. In a police photo array shown to him on March 26, 2015, Butler identified Mull as the shooter. After seeing Mull in person in the courtroom, Butler did not think that Mull was the shooter because he was a different height and had different body language.

¶20    Vachune Hubbard testified as follows. He has known Mull for a long time and grew up in the same neighborhood as Mull. Within a week of the shooting, he spoke to Mull, either in person or on the phone. During that conversation, Mull told him that Mull had "shot through the door," and that Mull had "got to shooting" when the fight broke out.

¶21    Detective Michael Washington testified that he investigated the shooting and interviewed Pugh on March 10, 2015. That interview established that both Smyth and Mull were potential suspects, and that Mull was a suspect based on information Pugh had received at the vigil for E.W.

### B. Evidence Not Presented at Trial

¶22    Mull asserts that the following evidence, all taken from police reports provided to trial counsel and not presented at trial, implicates Smyth, Tyler Harris, and Bankhead as possibly being the shooter. The evidence implicating

Smyth includes the following. The person who bumped into Smyth and started the fight was one of the people who retreated with E.W. to the bedroom and then continued to throw objects out the bedroom door. Smyth told police that he was "close by" the shooter when the shooting through the bedroom door occurred. Smyth's girlfriend told police that Smyth was in the house during the shooting and met up with her at her car after the shots were fired. An eyewitness named Keshawna Wright, who did not testify at trial, identified Smyth as the shooter in a police photo array, and stated that she was "absolutely certain" that Smyth was the shooter.

¶23 The evidence implicating Tyler Harris includes the following. Smyth and Tyler Harris were very close friends. Tyler Harris told police that he was "within a few feet" of the shooter when shots were fired. An eyewitness named De'Chanel Coveh, who did not testify at trial, picked Tyler Harris out of a police photo array as a person who possessed a gun at the party. Smyth told police that as he and Tyler Harris left the party, Tyler Harris told Smyth that he had "emptied [his] clip." Smyth also told police that Tyler Harris had posted a message online after the party to the effect that Tyler Harris needed to "stay low."

¶24 The evidence implicating Bankhead includes the following. Bankhead is a friend of Smyth. Smyth's girlfriend placed Bankhead inside the house when the shooting occurred. Shortly after the shooting, an eyewitness, Jalyn Lynch, who did not testify at trial, told police investigators that, just prior to the shooting, Bankhead was trying to get into the bedroom, had a gun, and shouted, "shoot into the door" and "shoot through that motherfucker." Bankhead told police investigators that he was wearing a red Wisconsin Badgers sweatshirt at the party.

### C. Whether Mull's Allegations in the Postconviction Motion as to Trial Counsel's Failure to Present Third-Party Perpetrator Evidence Suffice to Entitle Him to a Hearing

¶25 In his postconviction motion, Mull alleges that trial counsel was ineffective for failing to seek admission of a third-party perpetrator defense and to present the evidence described above indicating that Smyth, Tyler Harris, or Bankhead may have been the shooter. Specifically, Mull alleges that the evidence that Mull argues trial counsel should have presented, together with the evidence at trial, establishes that Smyth, Tyler Harris, and Bankhead were all present at the party at the time of the shooting; that each had either participated in or been in close proximity to the fight prior to the shooting; and that each was directly connected to the shooting.

¶26 We conclude that Mull alleges sufficient facts that entitle him to a *Machner* hearing on his allegation that trial counsel provided ineffective assistance by failing to seek admission, and to present evidence, of a third-party perpetrator defense. As described above, the motion contains allegations that one eyewitness had identified Smyth as the shooter, that Tyler Harris had fired his gun during the party, and that Bankhead had held a gun outside the bedroom door just prior to the shooting. The motion supports each allegation by reference to police reports attached to the motion. These allegations establish the "who," "what," "when" and "where" of the evidence Mull claims should have been presented. *See Allen*, 274 Wis. 2d 568, ¶24.

¶27 The motion also provides the "why" and "how"—that is, "the reason the [evidence] is important." *Id.* In the motion Mull alleges multiple weaknesses in the State's case against Mull, including the facts that Sanchez Harris "appeared to recant that he did in fact witness the shooting"; that Butler "asserted that he did

12

not think [Mull] looked like the shooter"; that Hubbard "received consideration from the State in exchange for his testimony"; and that the witnesses gave conflicting descriptions of the shooter's appearance. Mull alleges that against these shortcomings in the State's case, the third-party perpetrator evidence that trial counsel failed to present would tend to have exonerated him as the shooter. Altogether, Mull has made these allegations of deficient performance and prejudice with sufficient particularity to allow the circuit court to meaningfully assess his claim. *See id.*, ¶¶21-22.

¶28    As to deficient performance, the State contends that trial counsel *did* introduce evidence suggesting that Smyth, Tyler Harris, or Bankhead was the shooter during trial. However, Mull alleges that trial counsel did not present *all* of the evidence related to the possibility of a third-party perpetrator during trial. The State also contends that trial counsel reasonably "opted to present a reasonable-doubt defense," instead of relying on a third-party perpetrator defense. But, whether trial counsel's failure was justified remains to be tested at a ***Machner*** hearing. *See **Machner***, 92 Wis. 2d at 804 (purpose of having trial counsel testify at a hearing is to allow a court to determine "whether trial counsel's actions were the result of incompetence or deliberate trial strategies"); *see also **Breitzman***, 378 Wis. 2d 431, ¶65 (courts show deference to trial counsel's trial strategy unless it is "irrational" or "based on caprice"). In the absence of a ***Machner*** hearing, the State can point to no evidence in the record suggesting that trial counsel's decision not to introduce evidence of possible third-party perpetrators was the result of a reasonable trial strategy.

¶29    As to prejudice, the State takes issue with Mull's allegation in his postconviction motion that, in light of the evidence adduced at trial, "a different result would have been reasonably probable had a third-party perpetrator defense

been formally presented." This argument is more properly directed at the evidence to be presented at the *Machner* hearing. The State does not persuasively argue that Mull has failed to sufficiently *allege* facts that could support a showing of prejudice.

¶30    In sum, we conclude that Mull has met his burden of alleging facts that entitle him to a *Machner* hearing on both the issues of deficient performance and prejudice with respect to his allegation that trial counsel was ineffective for failing to seek admission of a third-party perpetrator defense and to present evidence of possible third-party perpetrators. To be clear, this court is not concluding either that trial counsel was deficient or that Mull suffered any prejudice. We are merely concluding that Mull has alleged sufficient facts to entitle him to a *Machner* hearing.

## III.    Ineffective Assistance of Trial Counsel Allegation Two: Testimony by Cheyenne Pugh

¶31    Mull alleges that trial counsel was ineffective with respect to testimony by Cheyenne Pugh.[9]  Specifically, Mull alleges that trial counsel was ineffective for:  (1) failing to object to hearsay testimony by Pugh during the State's direct examination; (2) eliciting yet more prejudicial hearsay on cross-examination; and (3) failing to seek to remedy that error. As we explain, we conclude that, taking his allegations as true, Mull has shown that he is entitled to a *Machner* hearing on the alleged ineffective assistance of trial counsel as to the

---

[9] In a related argument, Mull alleges that trial counsel was ineffective for failing to object to inadmissible testimony by Detective Michael Washington. However, Mull neither identifies what specific testimony by Detective Washington was inadmissible nor develops any specific argument directed at that testimony. Accordingly, we do not consider Mull's argument as to Detective Washington. *See* *State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (we need not consider undeveloped arguments).

third issue, whether Mull received ineffective assistance of trial counsel when trial counsel failed to take any remedial action concerning testimony Pugh offered during cross-examination.

### A. Direct Examination

¶32    In his postconviction motion, Mull alleges that trial counsel was ineffective for failing to object to certain portions of Pugh's testimony on direct examination that he describes as hearsay.  Specifically, Mull points to Pugh's testimony that she had received electronic messages stating that Mull was the shooter; that at a vigil for E.W., another individual told her that "everybody [was] going around saying [it was]" Mull; and that "everybody was saying [Mull's] name" in connection with the shooting.  Mull alleges that trial counsel's failure to object to this testimony as "clearly inadmissible hearsay" constitutes ineffective assistance.

¶33    Mull's allegation overlooks the fact that trial counsel *did* make a hearsay objection during Pugh's testimony on direct examination.  Specifically, during a series of questions concerning an electronic message that Pugh had received, which stated that Vashawn Smyth had been the shooter, the prosecutor read aloud the message.  Trial counsel made a hearsay objection.  The circuit court overruled the objection on the ground that "the statement … is not being offered for the truth of what it says, but merely that there's a statement that this witness received."

¶34    In its response brief, the State argues that given the circuit court's ruling on the hearsay objection that trial counsel *did* make, trial counsel's failure to raise hearsay objections to other portions of Pugh's testimony was not deficient performance.  In particular, the State argues that Pugh's testimony concerning

15

statements she heard at the vigil and concerning the electronic messages she received identifying Mull as the shooter was, as the circuit court wrote in its postconviction decision, "offered in the same context and for the same purpose" as the statement to which trial counsel unsuccessfully objected. Thus, according to the State, had trial counsel continued to make hearsay objections, the circuit court would have continued to overrule those objections for the same reason it gave when it overruled the objection trial counsel did make. Additionally, the State cites *State v. Wheat*, 2002 WI App 153, ¶14, 256 Wis. 2d 270, 647 N.W.2d 441, and *State v. Reynolds*, 206 Wis. 2d 356, 369, 557 N.W.2d 821 (Ct. App. 1996), for the proposition that "counsel is not deficient for failing to make a meritless objection." As a result, the State argues that here trial counsel was not deficient for failing to make further objections to Pugh's testimony, because those objections would have been futile.

¶35 In his reply brief, Mull simply reiterates his argument that Pugh's testimony concerning information she received via electronic message and at the vigil was hearsay, and that trial counsel was ineffective for failing to object to it. However, Mull does not reply to the main thrust of the State's argument, which, in effect, is that trial counsel was not deficient for failing to make additional hearsay objections when the circuit court had already overruled one hearsay objection during the same line of questioning. Mull does not explain why either the State's factual premise—that the court would have overruled any further hearsay objections—or the State's legal premise—that trial counsel cannot be deficient for failing to make an objection that would have been overruled—is wrong.

¶36 Therefore, we deem Mull to have conceded the State's argument that trial counsel was not deficient when he failed to make additional hearsay objections during Pugh's testimony on direct examination. *See State v. Chu*, 2002

16

WI App 98, ¶54, 253 Wis. 2d 666, 643 N.W.2d 878 (State's argument in response brief not disputed by defendant in reply brief is deemed admitted).

### B. Cross-Examination

¶37    Mull next alleges that trial counsel was ineffective for eliciting prejudicial hearsay from Pugh on cross-examination and for failing to remedy his error.  The pertinent facts are as follows.

¶38    On cross-examination, trial counsel asked Pugh a series of questions concerning the electronic messages Pugh had received.  During this line of questioning, trial counsel asked why Pugh had been "blocked," that is, prevented from communicating via electronic message, by an individual called Kia Wade.  As stated earlier, Kia Wade had sent Pugh a text message stating that Mull was bragging about shooting E.W.  Pugh explained that Wade had "blocked" her after Pugh asked Wade if she could show certain information regarding the shooting to the police.  In explaining Wade's motivation to "block" her, Pugh stated that "[a] lot of people w[ere] scared to go forward to the police because they didn't want their name[s] in it.…  They didn't want their name[s] in the whole situation.  They didn't want to talk to [the police]."  Pugh testified that because "they" did not want to go directly to the police, "they" would send her information instead.

¶39    Trial counsel asked Pugh to clarify who she meant by "they."  Pugh then gave the following answer:

> It was just other people coming up to me about the situation and sending they love out I guess about talking to me and say they apologize for her death and stuff like that.
>
> And also another lady was telling me about him going— being in the hood bragging about it saying that he hit a lick over there on 35th and he killed the stud bitch.

17

¶40    Mull alleges that this exchange between trial counsel and Pugh establishes ineffective assistance. Specifically, Mull alleges that trial counsel performed deficiently by: (1) "open[ing] the door to further rumors about [Mull]"; and (2) not "mov[ing] to strike the nonresponsive and inappropriate testimony" or "mov[ing] for a mistrial." Mull alleges that Pugh's testimony prejudiced him because it constituted an "admission" from Mull that he had been the shooter, that it presented him as cold, insensitive, and proud of killing E.W., and that it suggested that Mull had an animus against E.W. because of her sexual orientation.[10]

¶41    We first turn our attention to Mull's challenge to trial counsel's raising the topic of the electronic messages, thus opening the door for Pugh to provide hearsay testimony of rumors that Mull was the shooter. The State argues that trial counsel's decision to cross-examine Pugh on the information she had received via electronic message was reasonable because testimony on that topic had already emerged on direct examination. According to the State, trial counsel therefore performed competently by probing the provenance and reliability of the messages. We agree with the State's argument that trial counsel was not ineffective for questioning Pugh concerning the electronic messages already in evidence. Moreover, Mull fails to address the State's argument in his reply brief, and therefore, we deem him to concede that the State's argument is correct. *See Chu*, 253 Wis. 2d 666, ¶54 (State's argument in response brief not disputed by defendant in reply brief is deemed admitted).

---

[10]  Pugh explained during her testimony that a "stud" is a female who dresses like a male. Evidence was also presented during trial that the party at which E.W. had been shot was an "LGBT" party.

¶42 We next address Mull's challenge to trial counsel's not moving to strike or for a mistrial after Pugh's answer, which he asserts was hearsay.

¶43 We conclude that Mull's allegations in the postconviction motion present sufficient material facts to merit a *Machner* hearing. *See Allen*, 274 Wis. 2d 568, ¶¶21-24. That is, they present the "who" (Pugh), "what" (Pugh's answer), and "when" (cross-examination). *See id.* Mull also alleges with particularity a theory of why Pugh's answer is important to the question of prejudice, the "why" and "how" (Mull's admitting to and being proud of being the shooter, and referring to E.W. in a derogatory manner, so as to show Mull to be cold, insensitive, and guilty). *See id.* Mull has made these allegations of deficient performance and prejudice with sufficient particularity to allow the circuit court to meaningfully assess his claim. *See id.*, ¶¶21-22.

¶44 As to deficient performance, the State posits that trial counsel had strategic reasons for not moving to strike or for a mistrial. However, the State's musing is speculative, and the facts pertinent to trial counsel's conduct are to be developed at the *Machner* hearing. Similarly, as to prejudice, the State argues that Mull does not explain why the circuit court "would have been likely to grant" either a motion to strike or for a mistrial, but the premise for this argument is also speculative and to be tested at a *Machner* hearing.

¶45 In sum, we conclude that Mull has met his burden of alleging facts that entitle him to a *Machner* hearing on both the issues of deficient performance and prejudice with respect to his allegation that trial counsel was ineffective for failing to move to strike or for a mistrial following Pugh's answer on cross-examination. As above, this court is not concluding either that trial counsel was

deficient or that Mull suffered any prejudice. We merely conclude that Mull has alleged sufficient facts to entitle him to a *Machner* hearing.

## IV.    Ineffective Assistance of Trial Counsel Allegation Three: Cross-Examination of Vashawn Smyth

¶46    In his postconviction motion, Mull alleges that trial counsel was ineffective during cross-examination of Vashawn Smyth. Specifically, Mull alleges that trial counsel performed deficiently by not adequately exploring Smyth's "motive to testify falsely" and "prior instances of his untruthfulness." The State responds that Mull has not adequately alleged that he was prejudiced by trial counsel's failure to do so. We agree.

¶47    As described above, Smyth testified at trial that he saw Mull with a gun prior to the shooting. Smyth also testified that "after the fight" he saw Mull pointing his gun "towards the living room" but that he did not witness the shooting. Thus, Smyth's testimony served primarily to establish that Mull was armed at the party, and that Mull had drawn his gun at some point after the fight.

¶48    Neither of these facts was established solely by Smyth's testimony. To the contrary, Sanchez Harris testified that Mull had specifically told him that Mull was carrying a gun. Additionally, the testimony of both Sanchez Harris and Carter suggested that, even if they were slightly unclear whether they had seen Mull actually fire his gun, they did see him with a gun near the time of the shooting. Indeed, throughout the entire trial, no evidence appears to have been presented suggesting that Mull did not have a gun at the party. Moreover, Smyth described Mull as pointing his gun "towards the living room," not towards the bedroom door at which the shots were fired. Thus, the evidence provided by Smyth did not establish any fact not already present in the trial testimony, nor did

20

it contradict any other testimony favorable to Mull. Accordingly, we conclude that Mull has failed to adequately allege that he was prejudiced by his trial counsel's failure to explore Smyth's credibility in greater depth.

## CONCLUSION

¶49 As explained above, we conclude that Mull has sufficiently alleged that he is entitled to a hearing on two of his allegations of ineffective assistance of trial counsel: (1) that trial counsel was ineffective for failing to seek admission of a third-party perpetrator defense and to present evidence of possible third-party perpetrators, including the testimony of the five witnesses identified in his motion; and (2) that trial counsel was ineffective for failing to move to strike or for a mistrial following Cheyenne Pugh's statement on cross-examination to the effect that Mull had bragged about shooting E.W. Accordingly, we remand to the circuit court for a ***Machner*** hearing on those two allegations of ineffective assistance of trial counsel. We also conclude that Mull has not met his burden with respect to his remaining ineffective assistance of trial counsel allegations.

*By the Court*.—Judgment and order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

21