COURT OF APPEALS
DECISION
DATED AND FILED

June 23, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP683-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2016CF365

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

AVERY L. APPLEWHITE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Manitowoc County:  JERILYN M. DIETZ, Judge.  *Affirmed*.

Before Reilly, P.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Avery L. Applewhite appeals from a judgment of conviction and an order denying his postconviction motion.  He asserts that the circuit court erred in denying his request for plea withdrawal, which was based on alleged ineffective assistance of counsel.  He contends his trial counsel performed ineffectively by not moving to dismiss the charges against him on the ground that his constitutional right to a speedy trial was violated.  For the following reasons, we affirm.

¶2     To withdraw a plea following sentencing, a defendant bears the burden of showing "by clear and convincing evidence that a refusal to allow withdrawal of the plea would result in manifest injustice."  *State v. Dillard*, 2014 WI 123, ¶83, 358 Wis. 2d 543, 859 N.W.2d 44.  Establishing that counsel provided ineffective assistance is one way to demonstrate a manifest injustice.  *Id.*, ¶84.  Ineffective assistance of counsel requires proof that counsel's performance was deficient and the deficient performance prejudiced the defendant.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "A determination regarding the effectiveness of counsel involves a mixed question of fact and law.  We will uphold factual determinations of the circuit court unless they are clearly erroneous; however, whether trial counsel's performance was deficient and prejudiced the defendant are questions of law we review de novo."  *State v. Floyd*, 2016 WI App 64, ¶23, 371 Wis. 2d 404, 885 N.W.2d 156 (citation omitted).  "Whether a defendant has been denied his constitutional right to a speedy trial [also] presents a question of law, which this court reviews de novo, while accepting any findings of fact made by the circuit court unless they are clearly erroneous."  *State v. Urdahl*, 2005 WI App 191, ¶10, 286 Wis. 2d 476, 704 N.W.2d 324.

¶3     "[T]o determine whether an accused's right to a speedy trial has been violated … we use [a] four-part balancing test …." *Id.*, ¶11.  We must consider and balance "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).  As we have stated,

> [t]he right to a speedy trial is not subject to bright-line determinations and must be considered based on the totality of circumstances that exist in the specific case.  Essentially, the test weighs the conduct of the prosecution and the defense and balances the right to bring the defendant to justice against the defendant's right to have that done speedily.

*Id.*, ¶11 (citation omitted).

¶4     Related to the first consideration—"the length of delay"—we note that

> [g]enerally, a post-accusation delay approaching one year is considered to be presumptively prejudicial.  If the delay is presumptively prejudicial, the length of delay is one factor in the four-part balancing test.  As one of the four factors in the balancing test, the court considers "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."

*Id.*, ¶12 (citations omitted).  Here, 944 days, or approximately two years and seven months, passed between Applewhite's June 8, 2016 arrest and jailing and his January 8, 2019 plea.  Because that time exceeds one year, we begin with a presumption of prejudice, and we note that this length of time stretches well-beyond "the bare minimum needed to trigger judicial examination of the claim," especially since Applewhite's drug-dealing and bail jumping charges in this case were not particularly complex.  *See id.*, ¶12.

3

¶5    We next consider the "reason[s] for the delay." *Id.*, ¶11. With this, we

> first identify the reason for each particular portion of the delay and accord different treatment to each category of reasons. A deliberate attempt by the government to delay the trial in order to hamper the defense is weighted heavily against the State, while delays caused by the government's negligence or overcrowded courts, though still counted, are weighted less heavily. On the other hand, if the delay is caused by something intrinsic to the case, such as witness unavailability, that time period is not counted. Finally, if the delay is caused by the defendant, it is not counted.

*Id.*, ¶26 (citations omitted).

¶6    Applewhite was arrested and jailed on June 8, 2016, and this matter was scheduled for a tentative plea hearing on March 24, 2017. Instead of pleading, however, Applewhite requested that his attorney withdraw from the case, causing the tentative plea date to be rescheduled to May 26, 2017. At the May 26, 2017 hearing, it was learned that while Applewhite desired to be represented by new counsel, he had not secured new counsel or even contacted the public defender's office to request counsel. At that hearing, upon the circuit court's prompting, Applewhite indicated that he would contact the public defender's office "like today." The tentative plea date was rescheduled to June 23, 2017. By the hearing of June 23, 2017, and a subsequent one on July 14, 2017, Applewhite still had not secured new counsel, but he gave some indication at each of these two hearings of a desire to advance his case by proceeding pro se instead of seeking new counsel. Prodded by the circuit court, Applewhite did procure new counsel by the time of the August 2, 2017 hearing, the same counsel who Applewhite now claims was ineffective.

4

¶7    Because Applewhite's dismissal of his counsel on March 24, 2017, and his failure to act to secure new counsel or advance the case pro se between that date and June 23, 2017, constituted delays "caused by the defendant," those ninety-one days cannot be counted against the State, and we subtract them from the 944, totaling 853 days.[1]  As for the time from June 23, 2017, to August 2, 2017, a review of the record reveals that that forty-day period of delay appears to have been prompted by the court's strong encouragement that Applewhite secure counsel instead of proceeding pro se, even though Applewhite indicated some desire to proceed pro se.  We do count this time against the State, but not heavily so since there was no deliberate attempt by the State to hamper the defense.

¶8    Trial was set for October 9, 2017.  On September 12, the State requested that the trial date be adjourned due to the Wisconsin Crime Lab being "unable to process the drugs in the time frame allotted prior to the jury trial."  The next day Applewhite filed his speedy trial demand and objection to the adjournment request.  The trial was reset for November 28, 2017; however, on September 28, 2017, Applewhite requested a substitution of judge, resulting in the trial being rescheduled from November 28, 2017, to December 13, 2017.  Because Applewhite caused the delay from November 28, 2017, to December 13, 2017, this fifteen-day period should not be counted against the State.  Subtracting those fifteen days from the 853, gives 838 countable days.  Because we view the adjournment of the trial from October 9, 2017, to November 28, 2017, caused by delays at the crime lab, as akin to delays caused by "overcrowded courts," we count this delay against the State, but not heavily so, again, because there is no

---

[1] In his brief-in-chief, Applewhite admits that he "dragged his feet in seeking" replacement counsel and further states that "the 13 months after [his June 8, 2016] arrest saw timely litigation and delays *he* caused, so they aren't chargeable to the State."

indication of any "deliberate attempt by the government to delay the trial in order to hamper the defense." *See **Urdahl***, 286 Wis. 2d 476, ¶26.

¶9 On the morning of the scheduled trial, December 13, 2017, the State informed the circuit court and Applewhite that it only had test results related to two of the three "controlled buys" underlying Applewhite's criminal charges and that the one absent test result was due to a mistake between the State and the metro drug unit. The State then offered to proceed to trial on only the two controlled-buy counts and their four corresponding bail jumping charges and have the other controlled-buy charge and two related bail jumping counts dismissed without prejudice or severed for a separate trial. Applewhite balked at the State's suggestions and instead insisted that the State try him on all nine charges together. In doing so, he knowingly accepted that the trial would then have to be held, as the court emphasized to him, "at a later date." Applewhite did not seek dismissal of any charges based upon his speedy trial request, but instead focused exclusively on getting released from custody on signature bond. The court honored Applewhite's requests, rescheduling the trial to March 22, 2018, and modifying Applewhite's cash bond to a signature bond, resulting in his release from custody.

¶10 Because Applewhite could have chosen to have six of the charges resolved by trial on December 13, 2017, with the three others dismissed without prejudice, the trial delay was caused, at least in part, by him. Thus, we question whether these ninety-nine days should be counted against the State. Nonetheless, for the sake of erring on the side of Applewhite, and because we must presume the trial otherwise would have gone forward on December 13, 2017, if the mistake had not occurred between the State and the metro drug unit, we do count this trial delay against the State. The countable days remain at 838.

¶11    The unchallenged testimony of Applewhite's trial counsel at the postconviction hearing was that, prior to the March 22, 2018 trial date, Applewhite asked counsel "if the trial could be moved because he wanted to spend time with his, I believe, it was his daughter's birthday."[2]  Counsel added that he "was able to find a reason why [he] might need more time," adding that he then requested an adjournment of the trial on the basis that he "wanted more time to look into" an additional witness on the State's witness list that he had not previously noticed. Three days before trial, on March 19, 2018, the circuit court granted Applewhite's adjournment request and rescheduled the trial to September 19, 2018.  This 181-day delay from March 22, 2018, to September 19, 2018, was caused by Applewhite and cannot be counted against the State, so the number of countable days is reduced from 838 to 657.[3]

¶12    On March 20, 2018, the day after Applewhite's adjournment request was granted, the State informed the court that a key witness—a State Crime Lab analyst—would be on leave and thus unavailable for the scheduled September 19, 2018 trial date, so the trial was reset to October 3, 2018.  This additional fifteen-day delay is not counted against the State as *Urdahl* holds that "delay … caused by something intrinsic to the case, such as witness unavailability … is not counted." *See id.*  Thus, 657 days becomes 642 days.

---

[2] Additionally, the circuit court made the finding that counsel testified "credibly" and "consistently with the court record" at the postconviction hearing and that the March 22, 2018 "trial was adjourned at the defendant's request, demonstrating that he was not eager to proceed to trial and wasn't bothered by the delays, much less prejudiced by them."

[3] Applewhite acknowledges in his brief-in-chief that this "six-month delay ... isn't chargeable to the [S]tate."

¶13    Prior to a September 13, 2018 pretrial conference, Applewhite was arrested, charged, and held in the Sheboygan County jail on a separate case. Additionally, Applewhite was scheduled to go to trial on two different Sheboygan County cases on the same day as he was scheduled to go to trial on the Manitowoc County charges in this case, October 3, 2018.

¶14    At the pretrial conference, the circuit court resolved the trial-date conflict by adjourning the trial in this case to January 2019, indicating that the court was giving the Sheboygan trial precedence because Applewhite was currently in custody in that county and those related Sheboygan County charges were "older" than the charges in this case. Prior to the scheduled trial in January 2019, Applewhite pled, on January 8, 2019, to the single count of delivering cocaine that is at issue in this appeal. We do not count this ninety-seven-day delay, from October 3, 2018, to January 8, 2019, against the State because it was "caused by something intrinsic to the case"—Applewhite had trials scheduled for the same day in two different counties. Furthermore, the fact that Applewhite was in custody in the Sheboygan County jail instead of remaining free on his Manitowoc County signature bond was in no way due to negligence by the State or overcrowded courts much less a deliberate attempt by the State to hamper Applewhite's defense. *See id.* The countable number of days is reduced further to 545.[4]

¶15    As indicated, none of this 545-day period was due to "[a] deliberate attempt by the government to delay the trial in order to hamper the defense." *Id.*

---

[4] Even if we did count these ninety-seven days against the State, it would not alter our final balancing analysis, as the delay related to these days would be weighted so minimally against the State.

As a result, none of this nearly one year and six month period is weighted heavily against the State. *See id.* Indeed, much of this period is simply part of "the bare minimum needed to trigger judicial examination" of the charges. *See id.*, ¶12. That said, we will consider all of this nearly eighteen-month period as being weighted, modestly, against the State.

¶16 We next consider the third part of the balancing test, Applewhite's "assertion of his [speedy trial] right." *See id.*, ¶11. Despite sitting in jail the entire time, Applewhite did not assert his right to a speedy trial until September 13, 2017, more than fifteen months after arrest. He successfully leveraged that speedy trial request to secure his release on signature bond three months later, on December 14, 2017, but made no argument for dismissal of the charges against him due to the failure to bring him to trial more speedily. At the postconviction hearing, trial counsel confirmed that after Applewhite was released from custody on that date, he never asked counsel to file another speedy trial demand in this case. Indeed, the speedy trial issue was never again raised preconviction, and instead of proceeding to trial at the next scheduled trial date of March 22, 2018, Applewhite sought an adjournment of the trial due to his daughter's birthday, which resulted in the trial date being moved back six more months. As the circuit court stated it, this adjournment request following Applewhite's December 14, 2017 release indicated that Applewhite's "interests had changed."

¶17 As to the final factor, prejudice, "[c]ourts consider [this element] with reference to the three interests that the right to a speedy trial protects: prevention of oppressive pretrial incarceration, prevention of anxiety and concern by the accused, and prevention of impairment of defense." *Id.*, ¶34. The latter interest is the most significant because "the inability of a defendant [to] adequately

9

… prepare his case skews the fairness of the entire system." *Id.* (alteration in original; citation omitted).

¶18 With regard to the first two interests, Applewhite was confined on the charges in this case for more than a year and one-half before he was released on a signature bond. While he repeatedly attempted to get his bond lowered and/or reduced to a signature bond, obviously demonstrating his desire to be released from jail confinement, he did not file his speedy trial demand until fifteen months into his confinement. Moreover, for months he demonstrated no sense of urgency as he sat confined yet did not contact the public defender's office to try to advance his case or his pretrial release. After he was released on signature bond in December 2017, he never again raised the speedy trial issue preconviction, and he even sought to adjourn the March 2018 trial date because of his daughter's birthday. Applewhite's actions suggest limited "anxiety" or "concern" that the charges against him remained pending; his main concern simply being to get, and remain, released from confinement on signature bond. And as the circuit court noted in its postconviction decision on the speedy trial issue, Applewhite "had multiple cases pending in multiple counties, which would presumably dilute the anxiety caused by this one in particular." As to impairment to Applewhite's defense, Applewhite puts forth no argument, so we can only presume his defense was not impaired. As Applewhite acknowledges in his briefing, "emotional suffering and impediments to [his] trial preparation—are less overt in this record" and "the prejudice he suffered is harder to pinpoint."

¶19 Balancing the four speedy trial considerations—length of delay, reasons for delay, assertion of speedy trial right, and prejudice—we agree with the circuit court that Applewhite "has not shown that his fundamental right to a speedy trial was violated." Even if we attributed significantly more delay to the

10

State than the approximately eighteen months we do, we would not find a violation.[5]  In *Urdahl*, we expressed that the "twenty and one-half months attributable to the State is certainly a long period of time, but not extraordinarily long, and no part is weighted heavily against the State because it was due to the court's congested calendar." *Id.*, ¶37.  Likewise here, none of the time that could possibly be attributed to the State is weighted heavily against it.  Furthermore, Applewhite's nonchalant attitude toward securing counsel, his request for adjournment of trial so he could attend his daughter's birthday, and his failure to again raise the speedy trial issue with his counsel once he was released on signature bond do not support his side of the balance.  And lastly, he has shown only minimal prejudice.

¶20  Because it is well-settled that trial counsel is not ineffective where he/she fails to raise a meritless issue, *State v. Wheat*, 2002 WI App 153, ¶14, 256 Wis. 2d 270, 647 N.W.2d 441, which a speedy-trial motion to dismiss would have been in this case, we conclude that counsel did not perform ineffectively by failing to make such a motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).

---

[5] Applewhite states in his brief-in-chief that nineteen of the "31 months between [his] arrest and plea" "*aren't* chargeable to the state," and adds that only one eight month period and one four month period—so twelve months—of these thirty-one months are to be counted against the State. (Emphasis added.)  Again, we err on the side of generosity to Applewhite with our counting of days.